Luke, J.'
This case arose as an action on a life-insurance policy. It comes to this court on questions of construction. The policy was issued on January 19, 1907, for $5,000, in consideration of an annual premium of $190.40, payable in advance, the insured being allowed the privilege of paying a semiannual premium of $99 or a quarterly premium of $50.45, as he might elect at the time for paying any premium. The policy contains the following special provisions:
“Grace in payment of premiums. An extension of thirty days will be allowed in the payment of any premium, except the first, and the company agrees to accept any premium, without interest charge, if tendered within, thirty days of the time of default, during which thirty days the policy will remain in force.”
“Loans. After this policy has been in force two years, the company will loan thereon, as sole security, the amount stated in the *299 table on the third page hereof, at not more than five per cent, per annum, payable in advance. The loan shall be made in accordance with the company’s loan agreement; the amount of loan available at any time shall include any previous loans then unpaid, and premiums under this policy shall be paid in full up to the end of the policy year succeeding the date when the loan is obtained. The company agrees that the loan may be renewed annually, if interest be paid for one year in advance.”
“Automatic” non-forfeiture clause. “If the insured shall fail to pay any premium when due, and if there is no indebtedness to the company, the insurance will automatically continue from such due date as term insurance, if premiums have been paid for three months, for 30 days; if for six months, for .40 days; if for nine months, for 50 days; and for the period specified in the table on the third page in the table hereof, if premiums have been paid for one year.
“If premiums have been paid for two or more years the company, upon failure of the insured to pay any premium, will charge the premiums as they fall due as loans against the policy until the loan value is consumed, and this policy shall thereby continue in full force. At any time while the policy is thus sustained, the payment of premiums may be resumed, without medical re-examination, and the accumulated debits may be paid or stand as a loan against the policy.”
“Six-months” non-forfeiture clause. “If the insured makes written application within six months after default in payment of premiums, the company will extend this policy as a term policy for its full amount; or, upon surrender of this policy, will issue a participating paid-up policy, or will pay the cash surrender value, as stated in the table on the third page hereof under the respective heads.” .
The table referred to in the foregoing clauses is printed in the body of the policy, under the heading, “Table of Cash Loans and Guaranteed Surrender Values.” It is there based upon a policy for $1,000, with a stipulation ■ that certain figures therein shall be increased or diminished in proportion to the sum for which the policy may be issued. Eeproducing that table on the basis of a policy for $5,000—the amount of the policy in this case—for the period here in point, we have the following:
*300 Table of Cash Loans and Guaranteed Surrender Values.
End of Policy Year
1st
2nd
3rd
4th
5th
6th
7th
8th
Cash
Loan
200.00
300.00
405.00
510.00
620.00
730.00
840.00
Cash
Value
$100.00
100.00
200.00
300.00
405.00
510.00
620.00 730.00
Participat-
ing
Paid-Up
Insurance
190.00
380.00
560.00
740.00
940.00
1095.00
1265.00
Extended
Insurance

d

<D
¡X
3
a
o
2
6
1
5
9
7
4
5
The plaintiffs petition contains the following material allegations: The first seven annual premiums were paid as they fell due, carrying the policy in full force to January 19, 1914. Under the loan clause the insured, during the year 1913, borrowed from the company the sum of $592.87, paying'the interest thereon in advance and making the principal due January 19, 1914. On May 27, 1914, the insured died, without having renewed or paid the loan, and without having paid any part of the eighth annual premium. On July 1, 1914, the plaintiff notified the defendant of the death of the insured, and demanded the usual form for making proof of his death. The defendant, however, refused to furnish such forms, claiming that the policy had lapsed prior to the death of the insured. The plaintiff, nevertheless, prepared such proofs and furnished them to the defendant, together with proof of her appointment as administratrix of the estate of the insured, and demanded payment of the amount due under the policy; but the defendant refused to pay. On July 6, 1914, the plaintiff, through her attorney, offered to pay to the receiver of the company all indebtedness which the insured owed the company at the time of his death, and demanded the benefit of the extended insurance provided by the “six-months clause” of the policy; but the defendant has continually persisted in the original position taken by it,* namely, that the policy had lapsed prior to the death of the insured, and that it was no longer of force. The Other allegations of the petition, based upon section 2549 of the Civil Code of 1910, are unimportant here. To' this petition the defendant interposed a demurrer, insisting upon a construction of the several clauses of *301 the policy above set forth which, if sound, would leave the plaintiff without any cause of action.
The plaintiff contends, (1) that she is entitled to recover under the provisions of the “automatic” clause, because the loan value of the policy was sufficient to sustain it from its seventh anniversary to the death of the insured; and that even if the loan value was • sufficient to sustain the policy only-to a time within thirty days of such death, then the grace clause, in connection with the “automatic” clause, would prevent a-forfeiture of the policy. The defendant contends, on the other hand, that even if the policy did have some small loan value left after the cash loan was obtained, the amount of it was insufficient to pay both interest on the loan and the premiums on the policy in accordance- with the terms of the policjr, because any amount of such loan value would be ineffective under the “automatic” clause of the policy unless it should be sufficient to pay both a full year’s premium on the policy and a full year’s interest on the outstanding loan; and it contends that in no event wortld the insured be entitled to tack the benefits of the grace and “automatic” clauses in order to cover the period in point. The plaintiff contends, (3) that, without regard to either the grace or the “automatic” clause of the policy, she is entitled to recover under the “six-months” clause, because the death of the insured occurred within six months after the due date of the unpaid premium; and, in this connection, she further contends that the conduct and attitude ’ of the defendant, taking the position that the policy had lapsed and refusing the parol application of her attorney and his offer to pay the outstanding indebtedness, not on the ground that the application was in parol or the tender was not legal, but on the ground that it recognized no such right or rights in her, excused her from the useless formality of making a written application under the “six-months” clause or making any additional tender of payment of the loan, oven if linder other circumstances it might be -necessary for the legal representative of the insured to make such payment or such written application. The defendant contends, on the other hand, that the privileges provided by the “six-months” clause of the policy were personal to the insured.and terminated upon his death, notwithstanding he died before the expiration of the period covered by this clause; and that, even if the privileges under this clause had *302 survived him, the plaintiff had not complied with the condition precedent to the rights it provided by making “written application within six months.” These contrary contentions arise solely from the different constructions which opposing counsel would place upon the policy in question.
1. The rules of law applicable to the construction of a policy of insurance are too well settled to admit of discussion. They were fixed by early decisions in this State, and have never been departed from. Where a provision in such a contract is clear and unambiguous, if it is within the law, it will be enforced as it is written; but where it is capable of being construed in two ways, that interpretation which is most favorable to the insured will always be placed upon it. Civil Code of 1910, §§ 2475, 2499, 4268 (4); Northwestern Mutual L. Ins. Co. v. Ross, 63 Ga. 199; Mass. Ben. Life Asso. v. Robinson, 104 Ga. 256 (2) (30 S. E. 918, 42 L. R. A. 261); Warwick v. Knights of Damon, 107 Ga. 121 (32 S. E. 951); Arnold v. Empire &c. Ins. Co., 3 Ga. App. 685 (60 S. E. 470); Hall v. Royal Fraternal Union, 130 Ga. 820 (1) (61 S. E. 977).
2. What interest is the company entitled'to charge, under the facts of this case, on the loan it made to the- insured ? It is necessary that this question be decided, for the reason that such interest must be deducted from the loan value of the policy and may therefore'materially affect the amount available-for other purposes under the policy. So, we would first ask, what is there in the policy, if anything, to take the case out of the general rule? The loan clause, which is set out in full in the foregoing statements of facts and which contains all of the provisions of the policy here in point, does not contain the loan agreement, but does contain a provision as follows: “The company agrees that the loan may be renewed annually, if interest be paid for one year in advance.” But the plaintiff’s petition, which as against the demurrer must be taken as true, alleged that the loan matured on the due date of the unpaid premium and that the loan was neither paid nor renewed. The petition, therefore, shows a set of facts for which the policy does not provide. The policy itself provides for but two contingencies: (1) payment and (2) renewal; whereas, according to the plaintiff’s petition, the insured neither paid nor renewed the loan. So we would next ask: By what rule of law or reason *303 can the company now claim a full year’s interest for less than a half year’s nse of its money? We know of no authority for so doing, and the plaintiff in error has cited none. We therefore hold, without hesitation, that, under the facts of this case, the amount of interest which the company is entitled to charge against the loan value of the policy—or to deduct from the amount of the death claim, as for that matter—is controlled by the general rules of law applicable to any other creditor who holds a note that is neither paid nor renewed upon its maturity; that is to say, the company is entitled to the contract rate of interest, for the actual time of its forbearance, and no more than that.
This case differs from the case of McEachern v. New York Life Ins. Co., 15 Ga. App. 222 (82 S. E. 820), so far as this point is concerned, in that here the policy was not delivered to the company, the loan agreement is not made to appear, and nothing else appears to add to, take from,*or otherwise vary the provisions of the policy by making the loan agreement a part of it. Each case must be decided upon its' own facts as they appear in the record; and this court can not, and does not, now attempt to say what are the rights of either party as fixed by the loan agreement or any affirmative action which the company may have taken in accordance with its provisions.
'3. Upon the failure of the insured to pay the eighth annual premium, or any part, thereof, in cash, was it necessary that the available loan value of'the policy should be equal to a full year’s premium, with interest thereon, in order for the “automatic” clause to prevent immediate forfeiture of the policy? A decision of this questidn is necessary, for the reason that the amount of the loan value available in connection with the “automatic” clause' is clearly insufficient to cover a full year’s premium with interest thereon. That the company is entitled to interest on a premium paid only by allowing it to be charged as a loan against the policy is settled by the decision of the Supreme Court in MacIntyre v. Cotton States Life Ins. Co., 82 Ga. 478 (1) (9 S. E. 1124). And it is conceded by the plaintiff that the amount of the loan value available under the “automatic” clause is only such sum as remains after deducting from the amount fixed by the policy the total amount of the cash loan and interest thereon. ' So the question is then narrowed down to this: If the policy did have some *304 loan value, but not enough to cover a full year’s premium with interest, did the insured forfeit the value which admittedly did^ remain, or did that value continue the policy of force pro tanto? Upon the answer to this question depends the answer to the first’ question; and this answer must be found in the terms of the policy itself. Looking alone to the “automatic” clause of the policy here in point, the question admits of but one answer, namely, that the insured was entitled to the benefits of whatever amount of loan value may have been available, whether it was more or less than a full year’s premium. The company’s express obligation under that.clause is to “charge the premiums as they fall due as loans against the policy until the loan is consumed.” Thus, the company’s obligation did not cease when such loan value became less than a full year’s premium, and could not then cease, because the loan value had not then been consumed. But every contract must be so construed as to give effect to all its parts and provisions, where such construction is reasonably possible, and the whole contract should be looked to in arriving at the construction of any part. Civil Code (1910), § 4268 (3). By reason of this rule of law and because premiums under the “automatic” clause are charged as “loans,” the company now insists that the insured could not be entitled to the benefit of having any premium charged as a loan, unless the facts were such'as to entitle him to a cash loan under the provisions of the loan clause. The particular provision of the loan clause insisted upon is, that, before a cash loan can be obtained, “premiums under this policy shall be paid in full up to the end of the policy year succeeding the date when the loan is obtained.” We think such a contention is not maintainable under any rule of law, reason, or common-sense construction. It is not necessary to point out the necessarily apparent 'distinction between a cash loan under the loan clause and a so-called loan under the “automatic” clause of the policy. But looking to the “automatic” clause we see that it prescribes but one condition upon which it shall become operative, namely, “upon the failure of the insured to pay any premium. ” And mot only this provision, but the entire “automatic” clause, would be absolutely nullified, left a mere group of meaningless words, if' it should be held, as insisted by counsel for the company, that premiums could not be charged as “loans” in accordance with the provisions of this clause, until, as *305 provided for obtaining a cash loan, premiums were paid in full to the end of the policy year. The above-quoted provision of the loan clause is thus clearly a limitation upon that clause only, applies to cash loans only, and does not affect charges to be made as “loans” under the provisions of the “automatic” clause. There is but one valid purpose which grace clauses and non-forfeiture clauses can serve, and that is to prevent a lapse of the policy immediately upon the failure of the insured to pay the stipulated premium, and no construction will ever be put upon any of them which totally destroys the benefits that they are designed to preserve.
4. The fourth headnote needs no elaboration. Non-forfeiture provisions of insurance policies sometimes expressly stipulate that “no grace will be allowed under this provision,” and where the meaning of the policy is thus made clear it will be enforced as written. Perkins v. Empire Life Ins. Co., 17 Ga. App. 658 (87 S. E. 1094). But there is nothing in the policy involved in this case to imply that the insured forfeits his rights under one clause by availing himself of the benefits under the other; and where the policy is capable of being construed in two ways, that interpretation must be placed upon it which is most favorable to the insured.
5. What was the loan value of the policy in question following its seventh anniversary? According to the table of values incorporated .in the policy it was, at the end of the sixth year, the sum of $620. But following the sixth anniversary, the insured borrowed $592.87, thereby reducing the loan value to $27.13. Under the rulings above announced, this remaining loan value, in connection with the “automatic” clause, was certainly sufficient to carry the policy of force until the sum of $27.13 was consumed, which would be well past the seventh anniversary of the policy, when, according to the same table, the loan value became $730. And a mathematical calculation shows that the sum of $730 exceeds the sum total of the loan ($592.87) and a semiannual premium ($99), together with the contract rate of interest (5% per annum) on both from their due date, January 19, 1914, to the death' of the insured, May 27, 1914, and this is true without regard to the provisions of the grace clause.
But the defendant contends that, because the insured failed to pay an annual premium of $190.40 at the end of the seventh year, *306 the loan value did not upon the arrival of that anniversary increase in the sum of $110, as appears from the table of values. Upon this contention, we have carefully considered the table and every provision of the policy pertaining thereto. The table itself affords but one index pointing to the loan value of the policy at any period of time or under any set of facts, and that index is the number of the last preceding anniversary of the policy, the seventh anniversary pointing clearly to the figures $730. And the provisions of the policy outside the table authorize no change whatsoever in the values as stated in the table, except only such as result from the consumption of those values in accordance with the purposes for which they were created and written into the policy. Upon this point the policy is not ambiguous. It does not reasonably admit of any construction other than that the loan value of the' policy at the time of the 'death of the insured was $730, less such items as could properly be charged against the value as hereinbefore pointed out.
6. The rulings announced in the sixth headnote are sufficiently full and explicit. They are controlled by the decisions of this court in Veal v. Security Mut. Ins. Co., 6 Ga. App. 721 (65 S. E. 714); Arnold v. Empire &c. Ins. Co., 3 Ga. App. 685 (5, 6), and authorities there cited, and McEachern v. New York Life Ins. Co., supra.
7. From what is said above, the plaintiff is, under the allegations of her petition, entitled to recover of the defendant, not only because of the provisions of the “automatic” non-forfeiture clause, but also because of the provisions of the “six-months” clause. The trial judge therefore did not err in overruling the demurrer to the petition.

Judgment affirmed.

Wade, G. J., and George, J., concur.