25928.   METROPOLITAN LIFE INSURANCE CO. *v.*
GEORGE.

DECIDED JULY 15, 1937.

*Jones, Russell & Sparks, Johnston & Jones,* for plaintiff in error.
*Robert G. Plunkett, R. F. Scarborough,* contra.

PER CURIAM. This is an action on an insurance policy. It appears that the policy sued on was issued to the insured by the defendant in 1918. The policy was originally issued on an annual-premium basis, but was subsequently changed to a semi-annual basis, the premiums falling due on November 25 and May 25. The insured paid the premiums up to, but not including, the semi-annual premium due May 25, 1935. The cash-surrender value of the policy at that time was $833. The insured had borrowed from the insurer $823.81, under the loan provisions of the policy. The insured died in August, 1935, within three months of the date of the lapse of the policy (including the 31 days of grace) for non-payment of premium. The policy provided: "(5) Options on surrender or lapse: Upon failure to pay any premium or any part thereof when due, this policy, except as otherwise provided herein, shall immediately lapse. If, however, the lapse occur after three full years premiums shall have been paid, the owner hereof, provided there be no indebtedness hereon, shall, upon written request filed with the company at its home office together with the presentation of this policy for legal surrender or for endorsement within three months from the due date of premium in default, be entitled to one of the following options: First: A cash-surrender value. Second: To have the insurance continued for a reduced amount of non-participating paid-up insurance (including any existing additions to the credit of the policy), payable at the same time and under the same conditions as this policy. Such paid-up insurance shall have an increase in cash-surrender value equal to the full reserve at the date of surrender, or a loan value up to the limit of the cash-surrender value. Interest on loan under such paid-up insurance shall be payable annually in advance to the end of the policy year at the rate of six per cent. per annum. Third: To have the insurance continued for its original amount as term insurance in whole number of months from due date of premium in default, without participation and without the right to loan, but with a cash-surrender value decreasing each year and ceasing entirely upon the expiring of the extension term, which value shall be the full reserve in even dollars for each one thousand dollars of insurance at the date of surrender. If the owner shall not, within three months from due date of premium in default, surrender this policy to

the company at its home office for a cash-surrender value or for endorsement for paid-up insurance or term insurance as provided in the above options, the policy shall be continued for a reduced amount of paid-up insurance as provided in the second option. The values of these options are mathematically equivalents, and have been calculated on the basis of the American Experience Mortality Table, with interest at three and one-half per centum per annum (omitting fractions of a dollar per thousand of insurance), less a surrender charge not exceeding in any case two and one-half per centum of the face of the policy; except that after the time for which premiums are payable as stated in the first page hereof, no surrender charge has been made. These values as computed produce the results set forth in the table herein at the end of the respective years. Values for other years (after the twentieth) will be computed upon the same basis for the entire reserve in even dollars for each one thousand dollars of insurance, and for even months in the event of election of term insurance, and will be furnished upon request of the insured. Any indebtedness to the company under this policy will be deducted from the cash value; and such indebtedness will also reduce the amount of paid-up insurance, or the amount continued as term insurance, in such proportion as the indebtedness bears to the cash value at due date of premium in default. The reserve for which funds are to be held upon this policy shall be computed upon the American Experience Mortality Table, with interest at three and one-half per centum per annum."

The pertinent part of the table contained in the policy in connection with paragraph 5 is as follows:

"Table of Guaranteed Loan Values and Surrender Options. Surrender charge having been deducted.

| End of year | Cash value or loan value | Paid-up non-participating life insurance | Non-participating term insurance continued for |
|---|---|---|---|
| 16 | $750 | $1508 | 25 yr. 11 mo. |
| 17 | $818 | $1608 | 27 yr." |

The insured died, and at that time the policy had lapsed. Therefore there can be no question that we must determine the right of

his beneficiary to recover any amount under the policy according to the terms of the non-forfeiture provisions in case of the lapse of the policy for non-payment of premiums, quoted above. Counsel for the defendant (we will for convenience refer to the parties as they appeared in the court below) does not contend that at the death of the insured the policy was void and of no force. It is admitted that, though lapsed, the defendant is indebted to the beneficiary in some amount, the issue being only as to the amount due under the non-forfeiture provision. The defendant contends that upon the death of the insured within three months from the date of the lapse of the policy the plaintiff was entitled, under the terms of the policy, to one of the following options: (1) A cash-surrender value in the amount of $833, less the indebtedness against the policy amounting to $823.81, or a net cash-surrender value of $9.19. (2) Paid-up non-participating life insurance in the amount of $1655, reduced by the proportion which the indebtedness, on May 25, 1935, bore to the cash-surrender value, or by the proportion of $823.81 to $833, which would leave $18 of paid-up non-participating insurance. (3) Non-participating term insurance continued for 28 years and 3 months, in the amount of $2000, reduced by the proportion which the indebtedness against the policy on May 25, 1935, bore to the cash-surrender value as of that date, or by the proportion of $823.81 to $833, which would leave $22 term insurance for the number of years prescribed in the table contained in the policy. We are unable to give the policy such a construction. The policy provides: "Upon failure to pay any premium or any part thereof when due, this policy, except as otherwise provided herein, shall immediately lapse. If, however, the lapse occur after three full years premiums shall have been paid, the owner hereof, *provided there be no indebtedness hereon,* shall, upon written request filed with the company, . . be entitled to one of the following options:" (1) A cash-surrender value, which amount is set out in the policy in a table, according to the years the policy has been of force. (2) Paid-up non-participating insurance, the amount of which is set out in a table in the policy, according to the years the policy has been of force. (3) Non-participating term insurance for the original amount of the policy, for so many years, according to a table set out in the policy.

The question presents itself: should the proviso, "provided there be no indebtedness hereon," be construed to exclude the right to exercise the options, that is, as one of limitation or exception? Or, stated in a different way, should the fact of an existence of an indebtedness on the policy at the date of its lapse fix the insured's rights as to the amount of paid-up non-participating insurance, or non-participating term insurance, he may obtain? Or, stated again in still a different way, does this provision foreclose the insured from paying the amount of his loan during the three-months period and selecting one of the options guaranteed? Let us look at the provision in connection with the following provision of the same paragraph: "Any indebtedness to the company under this policy *will be* deducted from the cash value; and such indebtedness will also reduce the amount of *paid-up insurance,* or the amount *continued* as *term insurance,* in such proportion as the indebtedness bears to the cash value at due date of premium in default." We do not construe these provisions to say, that, provided there is no indebtedness on the policy at the time of its lapse for non-payment of premium, the insured shall be entitled to exercise certain named options, but in case there does exist an indebtedness on the policy at the time of its lapse for non-payment of premiums he shall be entitled to exercise other and different options. The indebtedness provision above quoted necessarily contemplated the exercise of an election by the insured of one of the three options named in the same paragraph, as to non-participating term insurance or paid-up non-participating insurance; for it speaks of "paid-up insurance or the amount continued as term insurance;" and the only provision contained in the policy relating to term insurance or paid-up insurance is that relative to the options granted in paragraph 5. It further provides that if the insured does not make an election, it will be continued for a reduced amount of *paid-up* insurance. But the indebtedness provision speaks of "paid-up insurance of the amount *continued* as *term* insurance." We therefore do not construe the policy to provide, with reference to an indebtedness, that it shall determine the rights of the insured to the options, but, on the other hand, it merely provides that any indebtedness "will be" deducted from the cash value, and such indebtedness will also reduce the amount of paid-up insurance or the amount "continued as term insurance."

The existence of an indebtedness on the policy at the time of its lapse for non-payment of premium does not automatically reduce the amount of term or paid-up non-participating insurance that the insured may obtain under the exercise of the options. The use of the expressions "will be" and "will" and "continued as term insurance," in the provision in reference to an indebtedness, contemplates a condition to be taken into account *at the time of an election of the option by the insured.* That is, the provision may easily be construed to mean that if there be an unpaid indebtedness on the policy at the time the insured elects, he shall be entitled only to such an amount of paid-up or term non-participating insurance in the proportion that the insurance has to the cash value at the date of the lapse of the policy.

To restate our construction of this provision in another way: it clearly seems to be within the contemplation of the provisions of the policy that if the insured should fail to pay a premium, after payment of three full years premiums, he should, within three months from the date of the lapse, have an election as to different kinds of insurance. These elections were based upon certain reserve values known as cash values which the policy had after the third year, and which increased in amount each year thereafter. The policy contained a table showing the reserve value of the policy at the end of the third, fourth, fifth, and so on to the twentieth year. In connection with the reserve values, the table stated how much that value would buy in paid-up nonparticipating term insurance. In the policy the insurer agreed, "on proper and lawful assignment and delivery of this policy," to "loan, on the sole security thereof, up to the limit secured by the cash-surrender value as increased by the value of any paid-up additions." Manifestly the insurer could not guarantee to the insured the right to take a stated amount of paid-up insurance, in value equal to the cash-surrender value of his policy, where there existed thereon a loan in an amount equal to practically the entire amount of the cash-surrender value. The proviso was therefore inserted to protect the insurer in its loan. It did not foreclose the insured's right to pay the loan within the three-months period; it merely provided in effect that if, upon election, there was an unpaid loan, then only a certain amount of paid-up nonparticipating insurance, or non-participating term insurance, would

be obtainable. Certainly this is not a strained construction of the provisions of the policy. If the insurer had intended to say or contract that if upon the lapse of the policy there existed an indebtedness thereon, the insured would, within three months, be entitled to an amount of paid-up non-participating insurance or non-participating term insurance for a certain term of years, in the proportion that the indebtedness on the policy was to the cash value, then it would have been easy for it to say so. The provisions of the policy do not necessarily require such a construction; and under the familiar rule of construction of insurance contracts, that provisions should be construed most favorably to the insured, we think the construction we have given it is required. If this construction be correct, the insured, at any time during the three months after the lapse of the policy for non-payment of premiums, might pay any existing indebtedness thereon and be entitled to any one of the options of the full amount specified in the policy. The payment of such indebtedness during that period puts the policy in full force and effect as to the secondary insurance for the full amounts named therein. All rights of election and anything permissible under the terms of the policy in connection therewith would descend to the beneficiary.

It is very generally held, in cases where the options given in the policies were substantially the same as in the present policy, that the right of election under the options given is a property right, not a mere privilege personal to the insured; and that in case the insured dies after default, within the period allowed to make his election, the right of election survives to his beneficiary. We think these rulings are founded on the soundest sort of judicial reasonings. *Veal* v. *Security Mutual Life Insurance Co.,* 6 *Ga. App.* 721 (65 S. E. 714) ; *McEachern* v. *New York Life Insurance Co.,* 15 *Ga. App.* 222 (82 S. E. 820) ; *State Mutual Life Insurance Co.* v. *Forrest,* 19 *Ga. App.* 296 (91 S. E. 428). In the *Forrest* case it was said: "The insured having died before the expiration of his right to pay up his indebtedness to the company, which would have entitled him to the full benefit of the seven years and four months extended insurance provided by the table, this right also survived to his legal representative; and where such payment was made by her, or was legally tendered, or where she was excused by law from making such tender, such indebted-

ness can not operate to defeat or nullify the provisions of the 'six-months' clause of the policy by shortening the time of extended insurance as fixed by the table." In the *Veal* case Powell, J., said: "The insured died and the policy became a death claim before the six months expired. The fatal denouement came before the day of choice was ended, and stripped the matter of all opportunity of choice; for what sort of an election is there as to whether one will take $84 cash, $300 paid-up insurance, or $1000 (and increments) extended insurance when the insured is dead and the policy is a death claim? To speak of choice or question under such circumstances is to indulge in utmost absurdity." He further said: "When, in the case at bar, the insured died, the demand surviving to the beneficiary did not partake of that diversity and did not require that necessity for choice which existed under the three privileges open to the insured during that portion of the six-months period as to which he survived. The beneficiary's demand was fixed and single. She would undoubtedly demand the full amount." From these authorities, under the construction we have placed on the terms of the policy, where the insured died within three months from the date the policy lapsed for non-payment of premium, without having made an election, his right of election descended to his beneficiary; and the policy having been turned into a death claim, and the election, in so far as the beneficiary is concerned, being merely as between different amounts of money, the law will presume an election on the part of the beneficiary most favorable to her; that is, the greatest amount of money obtainable under the provisions of the policy. The policy having matured as a death claim, repayment of an indebtedness thereon from other funds was not necessary in order that the beneficiary have the right of the election of options. The insurer became indebted to the beneficiary in the greatest amount of money provided within the terms of the options, and also stood as creditor to her in the amount of the loan thereon. The plaintiff was entitled to recover the amount of the extended insurance stipulated in the options, less the loan and interest thereon. *McEachern* v. *New York Life Ins. Co.*, supra. The evidence supports the verdict, and the judge did not err in overruling the motion for new trial.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. As I see it, the controlling question here is whether the policy of insurance should be construed as providing for certain options if there were no indebtedness against the policy at the date of the lapse of the policy, and for different options if such an indebtedness existed. It is undisputed that the policy lapsed for the non-payment of the premium due May 25, 1935, and the lapse became effective at the expiration of the 31-day grace period after that date; that an indebtedness of $823.81 existed against the policy when it lapsed, and *was existing at the death of the insured on August 9, 1935;* and that the insured did not, before his death, make any tender either of the premium in default or of the indebtedness against the policy, and did not make any election as among the three options provided for in the policy. Under the provisions of the contract of insurance, if the insured had been in life on August 9, 1935, that day being before the expiration of the three-months option period after the lapse of the policy, and if there had been no indebtedness against the policy, he would have had the right to choose cash, paid-up insurance, or extended insurance. His beneficiary, after his death, had the same right of choice within three months after the lapse of the policy, because it was both a contract right and a property right which survived to her. And although she failed to exercise that choice, the option most favorable to her, in the event of an existing indebtedness against the policy, was automatically made by the terms of the contract; and that was the third option, which provided for non-participating term insurance continued for 28 years and 3 months in the amount of $2000, reduced by the proportion which the indebtedness against the policy on May 25, 1935, bore to the cash-surrender value as of that date, or by the proportion of $823.81 to $833, which would leave $22 as the amount which she was entitled to recover, and which was tendered to her by the insurance company. If the policy had not lapsed, it would have been in force as *primary* insurance, and the death of the insured would have matured the obligation of the insurer. There would have then been no longer insurance against the death of the insured, but there would have been a monetary liability of the insurer; and any indebtedness against the policy would automatically be deducted from the amount due under the policy, and the balance, if any, would be

the sum due the beneficiary. However, since the policy was not in force as *primary* insurance (the policy having lapsed), the liability of the insurer is fixed by the non-forfeiture terms of the policy; and, after the death of the insured, the only obligation of the insurer is to pay a determined sum of money. I can not agree with counsel for the defendant in error that the policy, when it refers in paragraph 5 to an existing "indebtedness," means an indebtedness existing *after* the expiration of the 31-day grace period subsequent to the non-payment of the premium due May 25, 1935.

I think that on this question the policy is clear and unambiguous, and should be construed to mean an indebtedness existing at the date of the lapse of the policy. This being true, it is obvious that neither the insured nor his beneficiary was entitled, under the terms of the policy, to any one of the three options which would have been available if there had been no indebtedness against the policy on the date of its lapse. Such a ruling would not be in conflict with any decision of the two appellate courts of this State, cited by the defendant in error, when the particular facts of those cases are considered. And any decisions of other States are not binding on this court. However, Metcalf *v.* Metropolitan Life Ins. Co., 1 Cal. App. 481 (37 Pac. (2d) 115, 38 Id. 401), cited and relied on by the defendant in error, is persuasive authority, because the policy there and the policy in this case are identical. The California court held that the debt against the policy could be paid by the beneficiary after its lapse. I agree to that ruling; but the question in the instant case is not one of an automatic foreclosure of the indebtedness or of the right of the beneficiary to pay the indebtedness after the lapse of the policy. The question here is whether the insured or his beneficiary can pay the debt *and thereby create an insurance right or option not given by the policy.* As stated in the brief of the plaintiff in error, "It is one thing to pay a debt and redeem a pledge, the pledge being the cash value or reserve value of the policy. It is another thing to pay the debt and thereby become entitled to an amount of insurance, not cash value, for which the policy did not provide, and for which there is no statutory provision in this State. On that question, which is the real and controlling question, the California case [supra], cited by opposing counsel, is very strong authority for our contention. There the policy terms were identical

[with those in this case]. The California court interpreted the policy as containing no provision for the insurance for which the plaintiff in this case is contending. The California court did that in so many words. The plaintiff in this case is contending that she was entitled, by paying the debt after lapse and after death [of the insured], to the amount of secondary insurance provided by the terms of the policy in case there had been no indebtedness against the policy. Our contention is that she may be able to pay the debt and she may be able to redeem the cash value of the policy which was pledged to secure the debt, but she can not thereby obtain the benefit of insurance which was available only on the condition that there be no indebtedness. That is exactly what the California court held. However, there was in force in the State of California a statute to which reference is made in the reported case. . . [Under the provisions of that statute] it was mandatory upon the company in that State to provide three options. The first option applied where there was no indebtedness against the policy. While the policy contained that option, it was not available, because there was an indebtedness [for] which the beneficiary actually tendered [payment] after lapse and after death [of the insured], but within the three-months period. The court held that this option did not satisfy the statute, because it applied only in case there was no indebtedness. The policy did not contain any provision granting to the insured the benefit of the second statutory option, which specifically applied in case there was an indebtedness, and which provided that the insured should be entitled to paid-up non-participating term insurance in the amount of the face of the policy, 'less any outstanding indebtedness' for such a period as the net value of the policy, the cash value less the indebtedness, would purchase. The California court held that the insured, or his beneficiary, was entitled to the benefit of that statute. The cash value of the policy without deducting the indebtedness was $441. The indebtedness amounted to $414.87. The net value was $26.13. Under the statute the insured was entitled to non-participating term insurance for the face of the policy, less the indebtedness for such a period as $26.13 would purchase. The California court held that the plaintiff was entitled to the benefit of that statute, because there was no such option provided in the policy." The writer has read the California

case and the California statute referred to, and agrees with the foregoing interpretation given to them, and with the contention and argument of counsel for the plaintiff in error. Under the provisions of the policy of insurance sued on, and the undisputed facts of the instant case, I think that a verdict in favor of the plaintiff for $22 was demanded, that the verdict returned was contrary to law, and that the refusal to grant a new trial was error.