Katherine Schmidt, Appellee, v. The Equitable Life Assurance Society of the United States, Appellant.

Gen. No. 38,905.

Opinion filed May 19, 1937. Rehearing denied June 2, 1937.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellant; MILES G. SEELEY, of Chicago, of counsel.

BANGS, CRANE & SLATER, of Chicago, for appellee; DRENNAN J. SLATER, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Cook county entered on February 29, 1936. A motion by plaintiff to strike defendant's plea and affidavit of merits for insufficiency, and to enter a finding and judgment for plaintiff on two additional counts filed to her second amended declaration, was sustained. The defendant chose to stand by its plea and affidavit of merits, and the court entered judgment by default against defendant for the sum of $10,242, and costs of suit.

This matter was previously before this court, and is reported in *Schmidt v. Equitable Life Assurance Society of the United States,* 282 Ill. App. 439. In the trial court, defendant had denied liability because of default in the payment of premiums, and judgment had been entered there for defendant. The opinion was filed November 20, 1935. A clear understanding of the issues involved here can only be had from a review of the opinion filed in that case, wherein most of the pertinent facts are recited. The portions of the opinion which we deem pertinent are as follows:

"This appeal by the plaintiff is in this court for the purpose of a review of the record wherein a judgment was entered in favor of the defendant in plaintiff's action in assumpsit on two life insurance policies executed by the defendant and issued upon the application of Edward C. Schmidt, the insured, wherein the plaintiff, his wife, was named as beneficiary in each of the policies. Upon the death of the insured, plaintiff was to receive from the defendant the sum of $5,271.60, being the amount due on each policy. The court sus-

tained defendant's demurrer to plaintiff's second amended declaration, and upon plaintiff's election to stand by her declaration, the court entered judgment for the defendant.

"The material allegations of the second amended declaration are that the policies sued on were issued by the defendant on October 20, 1925. They were applied for by the insured on September 17, 1925, and the initial premiums were paid on October 16, 1925. Each policy provided that the second and succeeding annual premiums were to become due on August 13, 1926, and each year thereafter.

"It further appears from the allegations of the amended declaration that the consideration for the payment of the face value of the policies, upon the death of Edward C. Schmidt, was the annual payment in advance of premiums on each policy of $293.26. August 13th was the annual premium date. Seven annual payments on each policy were made by the insured to and including August 13, 1931.

"Edward C. Schmidt died on September 16, 1932. The defendant was notified of his death the next day, but thereafter denied liability on the ground that the policies had lapsed because of a default three days prior to the date of death, being more than 30 days allowed under the terms of the policy within which to make payment of the premium due on August 13, 1932.

. . .

"It is true that the insured was in default, but the policies themselves determine whether the beneficiary is without relief, based upon the fact of the death of the insured subsequent to a default. Certain options are provided for in the policies, which are, in substance, that after three full years' premiums have been paid, on default of any subsequent premium and within three months after such default, the policy may be surrendered by the insured, who may elect one of the fol-

lowing options: (a) receive cash surrender value, (b) purchase paid-up insurance, (c) continue the insurance for the face amount as paid-up extended term insurance for the period shown by the table appearing in the policy. In the event of default in payment of premium after this policy has been in force three full years, if the insured does not select one of said options within three months after default, the insurance shall be continued as provided in option (c). *If there is any indebtedness against the policy, the cash surrender value shall be reduced thereby, the paid-up insurance shall be reduced proportionately, and the extended term insurance shall be for the face of the policy, less indebtedness, and for such period as the reduced cash value will purchase.* (Italics ours.)

"It is not disputed that the insured paid more than three full years' premiums. It necessarily follows that the policies by the terms thereof, were still in force after nonpayment. Before the expiration of the time to exercise the option, the insured died. Action on the policies survived, and as a result the plaintiff is in a position as beneficiary to recover the amount due from the defendant, as provided for by the policies themselves. . . .

"In construing this provision of the insurance contract, the language employed in these policies is controlling, and our conclusion that the policies were still in force is based upon the fact that after three full years' payment of premiums where the insured defaulted, he was required to select one of three options within the fixed time, and upon failure to exercise the option selected, the policies automatically continued for the face amount of the policy as paid-up extended term insurance for the period shown by the table in the policy. But death interfered with the exercise of any of the options provided for in the contract, and by its terms, the contract was still in force and the right

of action by the plaintiff survived, and she can maintain this suit to recover as beneficiary."

The cause was reversed and remanded, and after being redocketed in the circuit court of Cook county, an additional count was filed to the declaration, in which it is set forth that:

"By means whereof the defendant then and there became liable to pay to plaintiff the sum of $5,271.60 as in and by said policy by it promised and agreed, less loan and interest against said policy of $905.24, or a total of $4,366.36, together with interest on said last mentioned sum at the rate of five per cent per annum from the time said notice and proof of death were furnished to said defendant as aforesaid." This allegation is made as to each policy.

On February 13, 1936, a plea of the general issue to the third and fourth counts of the second amended declaration, was filed, supported by an affidavit of merits. Among other things, this affidavit of merits recites that:

"On August 13th, 1932, there was an indebtedness against each of the said policies amounting with interest to said date to $905.24, and the cash value of each of said policies reduced by the amount of said indebtedness and interest amounted to $1.48 per policy.

"The amount of extended term insurance which $1.48 would purchase under one of the policies sued upon was four and one quarter days.

"The said policies, and each of them, lapsed in all respects and became for all purposes null and void and of no further force and effect, before the death of said Edward C. Schmidt, as of August 18th, 1932."

In the policy of insurance involved here, under the title "Provisions relating to loans and surrender value," it is provided that:

"If there be any indebtedness against this policy, the cash surrender value shall be reduced thereby, the

paid-up insurance shall be reduced proportionately, and the extended term insurance shall be for the face amount of the policy less the indebtedness and for such period as the reduced cash value will purchase.''

As we understand the practice under the Civil Practice Act, the motion made by plaintiff to strike the affidavit of merits was in the nature of a demurrer, and admitted the facts, well pleaded. The pleadings filed after the reversal state the claim of each of the parties.

In *Massachusetts Mut. Life Ins. Co. v. Jones,* 44 F. (2d) 540, a similar situation arose as that presented in the instant case, and the court said:

''Nor are we any more impressed with the argument that the indebtedness of insured to the company for advances made by it to him from the cash value of the policy to pay premiums should not have been charged against the cash surrender value in ascertaining the amount of extended insurance which insured, after default in the premium, was entitled to. There is nothing in the policy nor is there anything in the statute of West Virginia (Code, c. 34, Sec. 34a (4), or in the statute of Massachusetts (G. L. c. 175, Sec. 144) which would make available for this purpose the gross cash value of the policy. On the contrary, both the policy and the statutes contemplate the appropriation for the purpose mentioned of only so much of the cash value as remains after deducting the indebtedness of the insured to the insurer. If, at the time in question, insured had elected to surrender the policy and receive the cash value in money, the amount he would be entitled to was the cash value, less the amount of his debt, and this amount, and no more, was the sum available for the exercise of the other options under the policy. The advances made by the company in the payment of defaulted premiums constituted a debt which under the contract became a lien on the policy.

When, therefore, the automatic non-forfeiture feature of the policy became applicable, the amount of the indebtedness was deductible both from the face of the policy and from the available cash reserve, for in no other way could a statement of account between the insured and the insurer be made, and we so held in *ᴾacific Mutual Life Insurance Co. of California v. Davin*, 5 F. (2d) 481, 484, where, speaking through Judge Rose, we said:

" 'It is said, however, that in this way the company received a double payment of its indebtedness: First, by deducting the indebtedness from the cash reserve; and, second, by again deducting it from the face of the policy as has already been pointed out. Deduction from the face of the policy is an altogether immaterial matter, for, as already pointed out, what the insured loses in the amount of the policy he gains in the time for which it is extended. *Quite obviously, for the protection of the company, it must deduct any indebtedness due the company from the cash reserve before it can apply the cash reserve to buying extended insurance, for if it did not do so, the insured would get insurance for which he had not paid, and for which, if he did not happen to die, within the period of extension, he never would pay and never could be compelled to pay.*' " (Italics ours.)

We are of the opinion that the court was in error in striking the affidavit of merits. Therefore, the judgment is reversed and the cause remanded with the direction that the order striking the affidavit of merits be vacated, and that a hearing be had on the issues joined.

*Judgment reversed and remanded with directions.*

Denis E. Sullivan, P. J., and Hebel, J., concur.