AFRO-AMERICAN LIFE INSURANCE COMPANY v. BESSIE B. LABERTH, a single woman.

186 So. 241.
Opinion Filed January 27, 1939.

S. D. McGill, J. Leonard Lewis and Wm. S. Robinson, for Petitioner;

W. McL. Christie, F. R. Hocker and Henry C. Berg, for Respondent.

PER CURIAM.—This Court is petitioned for a writ of certiorari to review the affirmance by an Appellate (Circuit) Court below of the·judgment of the trial (Civil Court of Record) Court holding that the beneficiary of the life insurance policy here sued upon is entitled under its terms to collect its face value, less an indebtedness thereon, when the insured died before the expiration of a three month period after default in premium payment given for the exercise of non-forfeiture provisions, one of which was the right to elect to take extended insurance, and when the cash value of the policy, minus all indebtedness thereon, was sufficient to continue the policy in force as extended insurance to a day later than that upon which the insured died.

The insurance policy contained the following non-forfeiture provisions:

"After three full annual premiums shall have been paid the Insured may within three months after default in the payment of any premiums surrender this policy and have the choice of the following options:

"(1) Receive its. cash surrender value, less any indebtedness to the Company hereon. The cash surrender value

shall be the reserve on this Policy at the date of default less a surrender charge, which in no case shall be more than two and one-half per cent of the sum insured; or

"(2)  Receive PAID-UP INSURANCE as is provided below, payable at the same time and on the same conditions as this policy. If no other option is selected this Policy will be continued in force under this option without any action on the part of the Insured; or

"(3)  Receive extended insurance for an amount equal to the face of this Policy, provided there is no indebtedness to the Company hereon, and for such term in years and months from the date of default as is provided below, but without the right to loans and cash surrender values.

"The amount of paid-up insurance or the term for which the insurance will be extended shall be such as the cash surrender value provided there is no indebtedness to the Company hereon, will purchase as a net single premium at the attained age of the Insured at the date of default, according to the American Experience Table of Mortality, and interest at the rate of three and one-half per cent per annum.

"Any indebtedness to the Company under this Policy will be deducted from the cash value; and such indebtedness will also reduce the amount of paid-up insurance or the amount continued as term insurance in such proportion as the indebtedness bears to the cash value at due date of premium in default."

A stipulation was entered into by attorneys for plaintiff and defendant waiving a trial by jury and submitting a true and correct statement of facts to the trial judge: ·

"1.  That the photostatic copy of the contract or policy of insurance which is attached to the declaration filed by plaintiff herein is a true and correct copy of that upon which this cause of action is based; further production or proof of the original of said contract is hereby waived for all pur-

poses; and it is hereby admitted that said contract was duly and legally executed.

"2. That the defendant herein assumed the rights and obligations of the North Carolina Mutual Life Insurance Company, the insurer named in said contract, did collect and receive premiums due thereon, and is liable on said contract to the same extent that the said North Carolina Mutual Life Insurance Company would have been liable on said contract had no such assumption ever taken place.

"3. That the plaintiff Bessie B. LaBerth, a single woman, is the same Bessie B. LaBerth named as beneficiary in said insurance contract.

"4. That Thomas W. LaBerth, the insured named in said contract, prior to the 28th day of July, A. D. 1935, duly fulfilled all of the conditions of said insurance contract on his part, including the payment of premiums up to but not including the premiums due on that date.

"5. That the said Thomas W. LaBerth did not pay the premiums due on said contract of policy of insurance on July 28th, 1935, and thereafter died on October 12.h, 1935, without having paid such last mentioned premium and without having exercised any of the options provided in said policy.

"6. That prior to the time of his death the said Thomas W. LaBerth borrowed from the defendant the sum of $222.00, contracting with the said defendant that should he, the said Thomas W. LaBerth, die before the repayment of said loan to the defendant, the said policy of insurance should be charged therewith as in such case provided in and by such insurance contract or policy.

"7. That due proof of the death of the said Thomas W. LaBerth was furnished the defendant on October 31st, 1935.

"8. That on April 27th, 1936, the plaintiff Bessie B. La-

Berth notified the said defendant that she did elect and make the choice of option No. 3 under the non-forfeiture provisions of said policy, that is to say, she elected the option to receive extended insurance.

"9. That the cash value of said policy at the date of the lapse thereof, and after deducting therefrom all sums owed the said defendant by the said Thomas W. LaBerth, together with interest thereon as provided by said policy of insurance, was sufficient to continue such policy in force as extended insurance from July 28th, 1935, to a day later than October 12th, 1935, if, under the terms of the policy, plaintiff is entitled to extended insurance.

"10. That the defendant tendered the plaintiff its check in the amount of $65.18, the sum which said defendant claimed to be the amount due said plaintiff under said policy, and which said check for such amount plaintiff refused to accept.

"11. That the plaintiff has been compelled to employ its undersigned attorneys and has thereby become obligated and liable for reasonable attorneys' fees to be paid her said attorneys for their services herein; and that $175.00 is a reasonable fee to be allowed plaintiff as such attorneys' fees.

"12. That, saving and excepting those matters of law submitted and argued to this Court in support of defendant's demurrer to plaintiff's declaration and in support of defendant's pleas to which plaintiff's demurrer has heretofore been sustained, defendant has no further defense to plaintiff's cause of action, and is liable to plaintiff, in addition to the costs of this suit and the aforesaid attorneys's fees, in the following amounts:

Principal amount of policy ....................$1000.00
Less amount of loan ............................ 222.00

Less interest on loan, 7/28/35
  to 10/12/35 ............................................... 2.77

                                                      $ 775.23

Plus interest on $775.23 10/12/35
  to 8/12/37 @8% ................................... 80.34

Total amount due, 8/12/37 ..........................$ 855.57"

In its demurrer to plaintiff's declaration defendant alleged three grounds of defense to said declaration, to-wit: (1) That the insured may not elect Option No. 3, providing for extended insurance after the time limit of three months provided in the contract of insurance; that the plaintiff herein did not attempt to make an election until nine months after default in premiums; (2) That the plaintiff was not entitled to elect extended insurance since there was an indebtedness of $222.00 existing on said policy by the insured to the insurer; that the contract of extended insurance may not be elected if there is any indebtedness existing on said policy of insurance by the insured to the insurer; (3) That the election of option three in said policy is a right exclusive to the insured. This demurrer was overruled. Pleas filed by defendant setting up the same ground were stricken upon demurrer.

After the above stipulation was entered into, the Court upon motion of plaintiff granted a final judgment upon the demurrer to defendant's pleas.

If the insured did not, within three months from the due date of the premium in default, make his election between these three options and surrender the policy in accordance therewith, the policy provided that the insured shall receive "paid-up insurance"; that is, in this case if the insured had lived more than three months after July 28, 1935, and had

not, ·in the meantime, exercised his choice of options, the company would automatically have continued the policy as paid-up insurance.

The policy made no provision for what occurred in this instance, viz.: the death of the insured before his three-month option period had expired and before the company could invoke the automatic provision which the policy applied at the end of the three-month option period.

The cases involving the right of the beneficiary to make ·an election between the three options when the insured died before the expiration of the three-month period without making such election are conflicting. However, some of the contrary decisions may, perhaps, be harmonized by reason of the fact that, in cases holding the right of election does not survive, the provision for paid-up insurance operated .automatically upon default, subject only to subsequent change to extended insurance by the election of the insured. In the other line of cases there was no such provision for .an automatic continuance upon default.· Annotation in 112 A. L. R. 1063; Note in 45 L. R. A. (N. S.) 391; Note in L. R. A. 1916F, 1246; 37 C. J.; Life Insurance, Sec. 249, pp. 510-511; Cyclopedia of Insurance Law by Couch, Vol. 2, Sec. 344, p. 1024.

A provision in a life policy which was similar and almost verbatim to that section of the policy before this Court was construed by the Alabama Court in North Carolina Mutual Life Ins. Co. v. Terrell, 227 Ala. 410, 150 So. 318, 89 A. L. R. 1459. The Court held the section providing that insured ·may receive "paid-up insurance" after the policy lapsed did ·not become operative automatically upon expiration of the · grace period for payment of the premium, where insured had ·three months within which to avail himself of one of the three options. Because the provision operated automatically upon the expiration of the three-month period instead of

upon default in the payment of the premium, this case may be distinguished from the cases adhering to the non-survival rule.

In Hampe v. Metropolitan Life Ins. Co., (Mo. App.), 21 S. W. (2d) 926, the policy provided that, if the owner failed to avail himself of any one of three options within three months after the due date of the premium in default, the policy would be continued for a reduced amount of non-participating paid-up whole life insurance. The last premium became in default on August 30, 1926, and the period for election ran until November 30, 1926, which was well beyond the time of the death of the insured. Suit was brought by the beneficiary to recover the face value of the policy. The Court said:

"It is true that during this period there was no express exercise of the option on surrender or lapse, either by the insured himself, or after his death by the beneficiary. However, upon the death of the insured, time ceased to be of the essence of the contract, so that the beneficiary, to whom the right of election had meanwhile passed, was thereupon entitled to treat her right as an immediate suable demand, and to bring suit, as she did, for the amount of the paid-up term insurance, subject to election under the option given her, which was the full face value of the policy itself. Knapp v. John Hancock Mutual Life Insurance Co., 214 Mo. App. 151, 259 S. W. 862."

In Jeske v. Metropolitan Life Ins. Co., 113 Pa. Super. 118, 172 Atl. 172, the policy provided that if the owner did not avail himself of one of the three options within three months from the due date of the premium in default the policy would be continued for a reduced amount of paid-up insurance. The insured did not pay the premium due September 15, 1931. He died November 7, 1931. Suit was

brought to recover the face value of the policy. The Court said:

"Where the policy gives the insured the right to elect which three or four options he might select, in case of default, and fixes a period of three months within which he can make his election, and neither the state law nor the policy makes any provision as to what option should be enforced in case the insured dies before the three months have expired, we are of opinion that the law will apply the option most advantageous to the insured, or his beneficiary, which in this case is the third option, viz.: the right to have the insurance continued for its face amount, $3,350, as term insurance in whole number of months from due date of premium in default. The law was, in principle, so applied in Metropolitan Life Ins. Co. v. Lillard, *supra; Emig's* Adm'r. v. Mutual Benefit Life Ins. Co., *supra;* Bartholemew v. Security Mutual Life Ins. Co., 140 App. Div. 88, 124 N. Y. S. 917, affirmed, 204 N. Y. 649, 97 N. E 869, reargument denied, 205 N. Y. 545, 98 N. E. 1098. See, also, Nielson v. Provident Sav. Life Assurance Soc., 139 Cal. 332, 73 P. 168, 96 Am. St. Rep. 146; Veal v. Security Mut. Life Ins. Co., 6 Ga. App. 721, 65 S. E. 714; Algoe v. Pacific Mut. Life Ins. Co., 91 Wash. 324, 157 P. 993, L. R. A. 1917A, 1237; McEachern v. N. Y. Life Ins. Co., 15 Ga. App. 222, 82 S. E. 820; State Mut. Life Ins. Co. v. Forrest, 19 Ga. App. 296, 91 S. E. 428. The contract of insurance is, if possible, to be so construed as to protect the insured, MacDonald v. Metropolitan Life Ins. Co., 304 Pa. 213, 155 A. 491, 77 A. L. R. 353."

In Equitable Life Ins. Co. of Iowa v. Germantown Trust Co. (D. C., Pa.) 94 Fed. (2d) 898, the policy provided that in the event of default in payment of premium if the insured elects none of the described options within sixty days the policy will be continued automatically as reduced

paid-up insurance.   Fifty-three days after default the insured died.   Suit was brought to recover the face value of the policy.   The Court said:

"As an alternative defense the appellant pleaded that if no election was made by the insured, within sixty days from the date of default the policy was automatically continued as reduced paid-up insurance under option I.   The nonforfeiture provisions contained in this policy are substantially the same as those in Jeske, Adm'x v. Metropolitan Life Ins. Co., 113 Pa. Super. 118, 172 A. 172, where the Pennsylvania appellate court applied the rights granted by the terms insurance option.   The court below, following the reasoning and conclusions in the Jeske Case, *supra,* held that the insured had sixty days after default within which to make the election; that the automatic continuance under option I did not take effect until after the expiration of the sixty days; that in the absence of an election and of the automatic continuance under option I the court will apply the option most favorable to the insured or his beneficiary; and that term insurance for the face value of the policy under option II was the most favorable option in the instant case.   We think the District Court properly followed the reasoning and conclusions of the Jeske Case, *supra,* and that it did not err in entering judgment for the appellee."

See also Metropolitan Life Ins. Co. v. George, 56 Ga. App. 191, 192 S. E. 514; Metcalfe v. Metropolitan Life Ins. Co., 1 Cal. App. (2d) 481; 37 Pac. (2d) 115.

The above authorities show that it is generally held, in cases where the options given in the policies were substantially the same as in the present policy (that is, where the option, providing that insured may receive paid-up insurance after the policy lapsed, did not become operative automatically upon *default*) that the right of election under the options given is a property right, not a mere privilege

personal to the insured, and that in case the insured died after default, within the period allowed to make his election, the right of election survives to his beneficiary.

The defendant contends that the trial court erred in allowing the beneficiary to elect the option providing for extended insurance after the expiration of the time limit of three months provided for in the policy of insurance sued upon herein. So long as the insured lived, time was of the essence of the contract. However, upon the death of the insured before the expiration of the three months, time ceased to be of the essence of the contract, so that the beneficiary, to whom the right of election passed, was thereupon entitled to treat her right as an immediate suable demand. Hampe v. Metropolitan Life Ins. Co. (Mo. App.), 21 S. W. (2d) 926; Veal v. Security Mutual Life Ins. Co., 6 Ga. App. 721, 65 S. E. 714; Rick v. John Hancock Mutual Life Ins. Co., 230 Mo. App. 1084, 93 S. W. (2d) 1126; Equitable Life Ins. Co. of Iowa v. Germantown Trust Co.. (D. C., Pa.) 94 Fed. (2d) 898.

This court is of the opinion that the automatic continuance under the option providing for paid-up insurance could not take effect until after the expiration of three months from the date of default; that as long as the insured lived time was of the essence of the contract and unless he exercised his choice of options before the expiration of the three-month period the policy would continue automatically as paid-up insurance; that, upon the death of the insured before the expiration of the three-month period, time ceased to be of the essence of the contract; that under the provisions of the policy the right of election was a property right which survived to the beneficiary that the beneficiary was entitled to treat her right as a suable demand.

Defendant then contends that because there was an indebtedness existing on the policy at the time of default in

payment of premium the insured by his representative is precluded from selecting option No. 3, under the non-forfeiture provisions of the policy. The policy contained the following provision:

"Any indebtedness to the Company under this Policy will be deducted from the cash value; and such indebtedness will also reduce the amount of paid-up insurance or the amount continued as term insurance in such proportion as the indebtedness bears to the cash value at due date of premium in default."

True it is that option No. 3 states that extended insurance may be received "provided there is no indebtedness to the Company hereon," but this provision is explained by the above quoted lines showing that an indebtedness should proportionately reduce the value of all the non-forfeiture provisions. The period for which extended insurance is granted is reduced because of the indebtedness, and where there are still funds available to the credit of the insured, as is the case here, such funds must be applied by the insurance company to an election from the non-forfeiture provisions. In addition to this, provisions in life insurance policies which discriminate between borrowing and non-borrowing insurants as regards options allowed, have, in most cases where the question has arisen, been held to be invalid, either in that they violate a statute prohibiting discrimination between insurants of the same class, or because such discrimination is deemed opposed to public policy.

See Ringstad v. Metropolitan Life Ins. Co. 182 Wash. 550, 47 Pac. (2d) 1045, 106 A. L. R. 1532; Annotation in 106 A. L. R. 1537; Metropolitan Life Ins. Co. v. Winiger, (Ind.) 12 N. E. (2d) 1008.

Typical of such a statute is the one in force in Florida, Section 6225, C. G. L. of 1927, which reads as follows:

"No life insurance company or association doing business

in this State shall make or permit any distinction or discrimination in favor of individuals between insurants (the insured) of the same class and equal expectation of life in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes . . . . "

The net cash value of the policy was sufficient to purchase extended insurance for the face of the policy, less the indebtedness, to a day later than that upon which the insured died. Therefore, the fact that there was an indebtedness existing on the policy at the time of default in payment of premium would not preclude the beneficiary from selecting option No. 3, under the non-forfeiture provisions of the policy.

It follows that the writ of *certiorari* should be, and is, quashed.

So ordered.

TERRELL, C. J., and WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., dissents.

THOMAS, J., not participating, as this case was submitted before he became a Member of the Court.

BROWN, J. (dissenting)—I am inclined to the view that the automatic operation of the "paid-up insurance" clause of the policy became immediately effective upon the expiration of three months from the default in the payment of premiums, no other selection of the options provided for in the policy having been made within said three-months period, either by the insured or his beneficiary.