Katherine Schmidt, Appellant, v. Equitable Life Assurance Society of the United States, Appellee.

Gen. No. 40,361.

Heard in the third division of this court for the first district at the October term, 1938. Original opinion filed December 13, 1939. Rehearing opinion filed April 10, 1940.

NELSON, SLATER & BOODELL, of Chicago, for appellant; DRENNAN J. SLATER and MARTIN CRANE, of Chicago, of counsel.

Mayer, Meyer, Austrian & Platt, of Chicago, for appellee; Miles G. Seeley, Donald M. Graham and Frederic Burnham all of Chicago, of counsel.

Mr. Justice Hebel delivered the opinion of the court.

This is an action in assumpsit wherein the plaintiff, as the beneficiary of two policies of life insurance issued by the defendant upon the life of Edward C. Schmidt, seeks to recover the face amount of such policies. A trial was had before the court without a jury, and after hearing the evidence, the court made a finding for the defendant and entered judgment thereon. It is from this judgment that the plaintiff appeals.

The plaintiff's action is as stated in her second amended declaration which originally consisted of two counts, identical except that each was based upon a different policy. The policies were identical except as to number. Defendant's demurrer to the first and second counts of the declaration was originally sustained by the trial court. The plaintiff elected to stand on said counts, and judgment was entered for the defendant. The plaintiff then appealed to this court and judgment for defendant was reversed and the cause remanded. (282 Ill. App. 439.) After the case was redocketed in the trial court, the plaintiff filed third and fourth counts to her second amended declaration identical except that each was based upon a different policy. Defendant filed a plea of the general issue and an affidavit of merits. Thereafter the plaintiff moved to strike the defendant's affidavit of merits for insufficiency and to enter a finding and judgment for the plaintiff on her declaration. The motion to strike was sustained, and, the defendant electing to stand by its affidavit of merits, the court entered judgment against the defendant for the sum of $10,242 and costs of suit.

Thereupon the defendant appealed to this court and this court handed down an opinion in Gen. No. 38,905 (290 Ill. App. 378) to the effect that the trial court was in error in striking the affidavit of merits and therefore reversed the judgment and remanded the cause to the trial court with directions that a hearing be had on the issues joined.

As above stated, when this case was in the trial court on the last occasion, the third, judgment was entered for the defendant and this appeal follows.

The plaintiff suggests that her first and second counts are based on the theory that the policy sued upon did not become effective until October 16, 1925, although each annual premium was made to fall on August 13th; that each premium paid by the insured, although due August 13th, carried the policy from the following October 16th to the same date in the next year and that, although insured died September 16, 1932, without having paid the annual premiums due August 13, 1932, the premiums paid on August 13, 1931, kept the policies in force until the following October. Plaintiff further suggests that this court on the first appeal has held adversely to the theory of the plaintiff's and is, therefore, not burdening the court with further argument and citation of authority on the theory contained in the first two counts of the declaration.

Plaintiff's theory in counts three and four is that the policies in terms provided that "after three full years' premiums have been paid hereon upon any subsequent default in the payment of any premium and within three months after such default, this policy may be surrendered by insured who may elect one of" three options. The three options provided by the policies are that the insured might elect within said three-month period after default to (a) receive the cash surrender values of the policies in cash; or (b) receive paid-up policies in such amounts as the cash surrender

values would purchase; or (c) receive extended insurance for the full amount of the policies for such period of time as their cash surrender values would purchase.

It is further stated by the plaintiff that the policies further provided that if the insured "does not select one of said options within three months of such default, the insurance shall be continued as provided in option c"; that if there should be any indebtedness against the policy the cash surrender value should be reduced thereby, the paid-up insurance should be reduced proportionately and the extended term insurance should be for the face of the policy less the indebtedness and for such period as the reduced cash value would purchase. It is further contended by the plaintiff that the policies were still in effect at insured's death by reason of the options contained in the nonforfeiture clause and were "surrendered" by her within the three-month period; that these option rights continued in existence for three months after lapse; that along with the option rights of necessity the policies were in existence for this three-month period.

The defendant's answer to this theory of the plaintiff is that on the third and fourth counts of the declaration the insured did not in fact have the three-month period to elect one of the options because the equities in the policies were not sufficient to carry them along during the three-month period even as late as the date of death, because there were loans against the policies which, by the terms of the policies, could be deducted from the cash value. Defendant in its affidavit of merits alleges two different dates of lapse; one on August 13, 1932, and the other on August 18, 1932. The defendant admits that the insured was entitled to a 31-day period of grace, but that the period of grace ended September 13, 1932.

The plaintiff's contention is that the policies expressly gave the insured the right within three months

after default to surrender the policies and elect one of three nonforfeiture options. During this three-month period the insured died, but the policies were still fully in effect regardless of outstanding loans.

The principal allegations of count three and four of the plaintiff's second amended declaration are that on October 20, 1925, the defendant company wrote the insurance policies in question and delivered the same to Edward C. Schmidt and agreed with him that in the event of his death the company would pay the plaintiff, the insured's widow and beneficiary, $5,271.60 upon the terms and conditions of the policy, and would pay double indemnity in case of accidental death.

The plaintiff further alleges that after the delivery of the policies and after three full years' payment of premiums had been made on each, on September 16, 1932, while the policies were still in full force and effect Edward C. Schmidt died without having exercised any of the nonforfeiture options. As stated, these options were to the effect that where the insured had paid three premiums, he could elect, within three months after default to (a) receive the cash surrender values of the policies in cash; or (b) receive paid-up policies in such amounts as the cash surrender values would purchase; or (c) receive extended insurance for the full amount of the policies for such period of time as the cash surrender values would purchase and that if the insured failed to elect among such options at the end of the three-month period the company would apply any equity in the policies to extended term insurance under option "c."

Counts three and four further allege that the plaintiff gave due notice of her husband's death to the company and made demand for payment, but that payment was refused. These counts allege payment of all premiums from 1925 to 1931 inclusive. The plaintiff asks for the face amount of each policy, less loans, to wit,

$4,366.36 on each policy, and, in addition thereto, interest from the date of demand for payment.

To these counts of the declaration the defendant filed the general issue and affidavit of merits, and so far as the affidavit of merits relates to the allegations of counts three and four, the defendant stated in paragraphs 13 to 16 as follows:

"13. By reason of the terms and conditions of the policies of insurance sued upon and by reason of the matters and things hereinbefore alleged the said policies and each of them lapsed on August 13, 1932 and were of no further force or value except that thereafter a grace period was provided by said policies of thirty-one days within which the said premiums might have been paid and also except that by reason of the failure of said Edward C. Schmidt or anyone else to pay said premiums to defendant on or before the end of said grace period, there became applicable to said policies by reason of their terms a provision that they would continue at their face amount as paid-up extended term insurance for such further period, after August 13, 1932, as was shown in a table set forth in said policy, to-wit, seven years and two months, provided that if there were any indebtedness against said policies the extended term insurance should be for the face amount of the policy less the indebtedness and for such period as the reduced cash value would purchase.

"14. On August 13, 1932, there was an indebtedness against each of the said policies amounting with interest to said date of $905.24, and the cash value of each of said policies reduced by the amount of said indebtedness and interest amounted to $1.48 per policy.

"15. The amount of extended term insurance which $1.48 would purchase under one of the policies sued upon was four and one-quarter days.

"16. The said policies, and each of them, lapsed in all respects and became for all purposes null and void,

and of no further force and effect, before the death of said Edward C. Schmidt, as of August 18, 1932.''

This court stated when this case was before it on the first review (*Schmidt v. Equitable Life Assur. Society*, 282 Ill. App. 439):

''It is not disputed that the insured paid more than three full years' premiums. It necessarily follows that the policies by the terms thereof, were still in force after nonpayment. Before the expiration of the time to exercise the option, the insured died. Action on the policies survived, and as a result the plaintiff is in a position as beneficiary to recover the amount due from the defendant, as provided for by the policies themselves. The contract provides for this, and the defendant is bound under the very terms of its contract. Otherwise, if the contract of insurance was at an end, all rights provided for in the contract would also terminate. To permit a forfeiture, however, under the circumstances, would be doing violence to the understanding of the parties in the instant case.'' In the consideration of the questions involved in this litigation—the policy provides by its terms that: ''Failure to repay such loan or to pay interest thereon shall not avoid this policy unless the total indebtedness hereon shall equal the total loan value, nor until thirty-one days after notice shall have been mailed to the insured, and to the assignee of record, if any, to their addresses last known to the Society.'' and from the policy it appears that this language is used:

''After three full years' premiums have been paid hereon, upon any subsequent default in the payment of any premium or instalment thereof, and within three months after such default, this policy may be surrendered by the insured (or assignee if any) who may elect one of the options.'' And bearing upon the question of indebtedness this policy provides:

''If there be any indebtedness against this policy, the cash surrender value shall be reduced thereby, the

paid-up insurance shall be reduced proportionately, and the extended term insurance shall be for the face amount of the policy less the indebtedness and for such period as the reduced cash value will purchase.'' Then the policy further provides:

''In the event of default in the payment of any premium or instalment thereof after this policy has been in force three full years, if the Insured (or assignee if any) does not select one of said options within three months of such default, the insurance shall be continued as provided under Option (c).'' which provides:

''(c) To continue the insurance for its face amount as paid-up extended term insurance for the period shown on the Table incorporated in the policy, or for such further period, as the dividend additions (if any) will purchase.'' So, when we come to consider the questions involved, we find that the insured died before he selected any of the options that were provided for in the 'policy, and by reason of these provisions the policy was in force at the time of the insured's death, and that the extended term of insurance, which is contended for by the plaintiff, did not come into effect until three months after the lapse of the policy.

The death of the insured did not deprive the plaintiff, as beneficiary, of the benefit of the options, because the right to elect among such options is not personal to the insured and the beneficiary may exercise the right of election after the death of the insured and within the period specified in the policy contract. This is the contention of the plaintiff, who adopts the citation of authorities of the defendant wherein it is stated by the plaintiff that it has at no time been contended by the defendant that any rights that the insured had under the policies did not go to his widow, and plaintiff adopts the citations that are contained in its, defendant's, brief on the second appeal in support of this proposition, namely: *Wheeler v. Connecticut Mut. Life Ins. Co.,* 82 N. Y. 543, 37 Am. Rep. 594; *State Mut. Life Ins. Co. v. Forrest,* 19 Ga. App. 296,

91 S. E. 428; *New York Life Ins. Co. v. Noble,* 34 Okla. 103, 124 Pac. 612; *Neilsen v. Provident Sav. Life Assur. Society of New York,* 139 Cal. 332, 73 Pac. 168.

In considering these questions this court in the opinion on the first appeal, 282 Ill. App. 439, said: " . . . the rule is well established without the necessity of citation of authorities, that courts are inclined to construe a contract of insurance so that it will not impair the indemnity of the insured, and adopt one which is favorable to the insured in order that the beneficiary, as in the instant case, may recover. These policies were prepared by the company itself, and the language is its langauge, not the insured's."

And the plaintiff suggests that even as the policies are written, the company had power to cut short insured's coverage in less than three months by serving notice as provided in the policy under the provision relating to loans, which provides: "Failure to repay such loan or to pay interest thereon shall not avoid this policy unless the total indebtedness hereon shall equal the total loan value, nor until thirty-one days after notice shall have been mailed to the Insured, and to the assignee of record, if any, to their addresses last known to the Society." Thus it is further contended by the plaintiff that on August 13, 1932, all defendant needed to do was to send notice to the insured of its intention to cancel the policies for nonpayment of principal and interest and a forfeiture of the policies would have been effective as of September 13, 1932, or four days before insured's death. However, there is no claim made by the defendant that any such notice was sent out, and the company cannot profit by its own failure to take advantage of the means provided in its policies for forfeiture.

We rather agree with this statement of the plaintiff, but not with the view of the defendant that the existence of the indebtedness took away the insured's option rights. Such is not provided for by the policy.

The plaintiff has called to our attention the case entitled *Equitable Life Assurance Society of the United States v. Golson,* 159 Ala. 508, 48 So. 1034, from which it appears that the life insurance policy provided that on default in the payment of any annual premium after the third, the policy might be surrendered for a nonparticipating paid-up policy, provided the policy was surrendered to the insurer within six months after the date of default, otherwise the policy to cease. The court held the policy did not provide for a forfeiture of the policy inside of six months after default and that after default insured had six months within which to surrender the policy and get paid-up insurance or to pay the premium should he decide not to surrender the policy. It was further held in that case that on insured's failure to so elect, the policy did not become forfeited for six months after the default, which in a measure supports the theory of the plaintiff in the present action.

Other cases have been cited by both sides, but the conclusion of the court must necessarily depend upon the contract of insurance, and we are of the opinion, after considering its provisions, that the court erred in finding for the defendant and that the plaintiff was not entitled to recover, and we believe the judgment should be reversed and judgment entered for the face amount of each policy, less loans against the same, and plus interest at the rate of 5 per cent from the date of death.

For the reasons stated, the judgment is reversed and the cause remanded with directions.

*Judgment reversed and cause remanded with directions.*

Denis E. Sullivan, P. J., and Burke, J., concur.

## On Rehearing.

The court filed its opinion in the above entitled cause, and subsequently the defendant filed a petition for a

rehearing, which was allowed, and to this petition for a rehearing the plaintiff filed an answer.

The defendant contends that the opinion of this court is contrary to that of the Supreme Court of Illinois in *Coons v. Home Life Ins. Co. of N. Y.*, 368 Ill. 231, and in discussing this suggestion it will be necessary to consider the written provisions of the insurance policies that we regard applicable to the questions involved. In *Coons v. Home Life Ins. Co. of N. Y.*, *supra*, the policy provides:

"Automatic extended insurance. On default in the payment of any premium hereon the insurance shall be continued, without action on the part of the insured, as paid-up non-participating term insurance as provided in option (b) aforesaid if the insured shall not within three months after such default surrender this policy . . . for its cash value, or paid-up insurance."

The provision which it is necessary to consider in the instant case—the subject matter of this litigation —is

"In the event of default in the payment of any premium or instalment thereof after this policy has been in force three full years, if the Insured (or assignee if any) does not select one of said options within three months of such default, the insurance shall be continued as provided under Option (c)." which provides:

"(C) To continue the insurance for its face amount as paid-up extended term insurance for the period shown on the table incorporated in the policy, or for such further period, as the dividend additions (if any) will purchase."

It is clear from the provision in the *Coons* case which we have incorporated that there is no question but that the extended insurance "continued without action on the part of the assured." In that case the assured could defeat this automatic provision by electing within three months to take the cash surrender value or

paid-up policy. However, in the case at bar affirmative action is required by the assured to elect one of the three options and it is only after the expiration of the three-month period that option "c" automatically applies.

In the *Coons* case the contention of the plaintiff was that the policy was continued in effect as extended insurance after default in payment of premium. There the plaintiff relied principally on a dividend, which had been tentatively appropriated to the policy but which was not yet due, to carry the extended insurance past the date of death. She also suggested that the extended insurance did not begin to run until the expiration of a 30-day period of grace, within which the premium might be paid. In the instant case the contention of the plaintiff is that the policy continued in effect during the three-month period granted the assured in which to make an election. There could be no change in the status of the policy from the date of default in payment of premium until the assured made an election or the three-month period had expired. No election was made and by the time the three months had expired the policy had matured by reason of the death of the assured.

We believe the application of the thought that this court had regarding the three-month period granted the assured within which to make an election is in accord with the provision of the insurance policy, and having considered the questions that have been called to our attention by the defendants in their petition for a rehearing, we are of the opinion that there is nothing which would justify a reversal of our conclusion that the judgment entered for the defendant should be reversed and judgment entered for the plaintiff for the face amount of each policy, less loans against the same, and plus interest at the rate of 5 per cent from the date of death.

For the reasons stated, we will adhere to the opinion heretofore filed on the questions involved.

*Judgment reversed and cause remanded with directions.*

The motion of the defendant that this court grant a certificate of importance whereby the defendant may effect an appeal to the Supreme Court, upon due consideration is denied.

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.