(No. 25756.—
KATHERINE SCHMIDT, Appellee, *vs.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

*Opinion filed February 14, 1941—Rehearing denied April 8, 1941.*

Gunn, C.J., and Shaw, J., dissenting.

Mayer, Meyer, Austrian & Platt, (Frederic Burnham, and Miles G. Seeley, of counsel,) for appellant.

Nelson, Slater & Boodell, (Drennan J. Slater, and Martin Crane, of counsel,) for appellee.

Mr. Justice Murphy delivered the opinion of the court:

This case was instituted in the circuit court of Cook county in 1933 and has been before the Appellate Court three times. (282 Ill. App. 439; 290 Ill. App. 378; 304 Ill. App. 261.) Leave to appeal was granted from the last judgment and the question is whether two insurance policies on the life of Edward C. Schmidt, appellee's husband, were in effect at the time of his death. Appellee, as beneficiary, brought this suit on the policies in the circuit court of Cook county. In a trial by the court without a jury

judgment was entered for appellant. The Appellate Court for the First District reversed the judgment and remanded the cause with directions to .enter judgment in favor of appellee for the face amount of the policies, less loans thereon, plus interest from the date of the insured's death.

The policies were of the kind known as "Ordinary Life," dated as of August 13, 1925. Each of them was for the face amount of $5,271.60, with annual premiums of $293.26, due each year on the anniversary of the policy date, with thirty-one days' grace for such payments. Each policy provides:

"Options on Surrender or Lapse. After three full years' premiums have been paid hereon, upon any subsequent default in the payment of any premium or installment thereof, and within three months after such default, this policy may be surrendered by the Insured (or assignee if any) who may elect one of the following options:

"(a) To receive the Cash Surrender Value of this policy; or

(b) To purchase non-participating paid-up life insurance payable at the same time and on the same conditions as this policy, but without double indemnity or total and permanent disability benefits; or

(c) To continue the insurance for its face amount (and any outstanding .dividend additions) as paid-up extended term insurance for the period shown in the opposite Table, or for such further period, as the dividend additions (if any) will purchase, but without further participation, or right to loans, or double indemnity or total and permanent disability benefits.

"In the event of default in the payment of any premium or installment thereof after this policy has been in force three full years, if the Insured (or assignee if any) does not select one of said options within three months of such default, the insurance shall be continued as provided under Option (c).

"If there be any indebtedness against this policy, the cash surrender value shall be reduced thereby, the paid-up insurance shall be reduced proportionately, and the extended term insurance shall be for the face amount of the policy less the indebtedness and for such period as the reduced cash value will purchase."

Seven annual premiums, aggregating more than $4000, were paid. The premiums due August 13, 1932, were not

paid. The insured died September 16, 1932, which was after the expiration of the grace period and within the three-months' option period. On August 13, 1932, the gross surrender value of each policy was $906.72, which had been reduced by loans against the policy amounting, with interest, to $905.24, leaving a net surrender value of $1.48 for each policy. This net amount would purchase extended term insurance under option (c) for four and a fraction days. If there had been no loans against the policies the surrender value would have purchased extended term insurance for a term far beyond the date of the insured's death. He did not elect any of the options, and the beneficiary did not do so after his death.

Each policy provides for a loan on the policy after it has been in effect three years, not to exceed its cash value at the end of the then current year, less any indebtedness due the society, provided all premiums shall have been paid to the end of such current year. Such loans bear interest at six per cent per annum payable on the premium anniversary date. It is further provided: "Failure to repay such loan or to pay interest thereon shall not avoid this policy unless the total indebtedness hereon shall equal the total loan value, nor until thirty-one days after notice shall have been mailed to the Insured, and to the assignee of record if any to their addresses last known to the Society."

Appellant claims the policies lapsed on August 13, 1932, on account of non-payment of premiums then due, except for the grace period and the extended insurance provided for by the options; that since the insured died after the grace period and did not elect any of the options, the net surrender value of the policies was properly applied to the purchase of extended term insurance under option (c); that such extended term insurance was effective from the date of the lapse and expired before the end of the grace period, and that, therefore, no insurance was in force at the time of the insured's death. Appellee agrees that when

extended term insurance once becomes applicable it begins to run from the date of the lapse, and not from the expiration of either the grace period or the three-months' option period, but she claims that where there is a lapse in a policy which has been in force for over three years and there are non-forfeiture provisions like those here involved, the insured, for three months after the date of the lapse, has a right to pay the indebtedness and select the option he desires; and that where death occurs during the three-months' option period, the right of selection inures to the beneficiary, but it is not necessary for the beneficiary to go through the formality of an election or to repay the indebtedness; that instead, the indebtedness can be deducted from the face of the policy, and that appellant had no right to apply the cash value of the policy to purchase extended insurance until the three-months' option period expired.

Among the cases cited and relied upon by appellant is *Coons* v. *Home Life Ins. Co.* 368 Ill. 231. In that case the insured defaulted in payment of a premium when due and died after the grace period and within the three-months' option period. When the premium was due the cash value of the policy, above loans and accrued interest thereon, was only $11.36, which was insufficient to permit a further charge against the policy under an automatic premium lien provision hereinafter noted. The cash value was used to purchase non-participating term insurance which expired before the death of the insured. The beneficiary claimed a dividend was due on the policy and should be applied toward the payment of the premium; that the dividend, with the cash value of the policy, would have extended it beyond the date of the insured's death. We held that under the terms of the policy the dividend was not applicable to premium payment until the end of the policy year, and the policy had lapsed. We also held that, under a similar option clause, the term of the extended insurance

began when the premium was due, and not at the end of the grace period.

The option clause in the *Coons case* is not materially different from that in this case. In the former, the insurance is to be continued without action on the part of the insured if the insured does not elect within the option period. In the case at bar, if the insured does not so elect, the option is to be applied. This is merely a transposition of the terms, without any difference in meaning.

The automatic loan clause in the *Coons case* provided:

"G. In lieu of automatic extended insurance the company will, on receipt of satisfactory request from the owner * * * advance the amount of any unpaid premium as a lien on the policy, with interest in advance, * * * if, after deducting from the cash value all existing indebtedness and interest * * * the balance shall equal or exceed the overdue premium with interest. Subsequent premiums will in like manner be advanced, from time to time * * * until the cash value * * * is not sufficient to cover the accumulated indebtedness and advance the premium. If the cash value * * * be * * * insufficient to pay an entire quarterly premium any excess of the cash value hereon over the indebtedness shall be used to purchase extended term insurance as aforesaid."

In that case the insured first defaulted in payment of premiums several years before his death. The insured took advantage of clause G, and, thereafter, the company advanced premiums and portions of premiums thereunder. When the surrender value of the policy was reduced to $11.36, which was insufficient to pay the full premium then due, the $11.36 was automatically applied to purchase extended insurance as required by the last sentence of clause G. This clause deals with a different subject than the option clauses, and contains a mandatory provision for automatically applying the cash value of the policy to the purchase of extended insurance whenever the cash value is less than a due premium, without reference to any option of the insured. The beneficiary in that case did not question the right of the company to act immediately when the

premium came due. The policies in this case do not contain any such clause, and appellee does question appellant's right to apply the surrender value to the purchase of extended insurance before the three-months' option period expires. There is a manifest difference in the rights of an insured under a clause which provides that extended term insurance shall apply automatically and immediately on lapse, and a clause by which it applies only at the expiration of the option period. The first deprives the insured of any option. The latter creates and preserves such an option until the option period expires. There is nothing in the *Coons case* that tends to make it controlling here.

Another case, *The Equitable Life Assurance Society* v. *Brandt,* 198 So. (Ala.) 595, is of no assistance in this case. In that case the policy provisions were the same as in this case, and the insured died under similar conditions. But the policy loan agreement which was executed while this suit was pending contained a clause that the advances and interest "shall not be repayable in cash but shall be deducted by the society from any sum (including the surrender value of dividend additions, if any, to said policy) otherwise applicable to the purchase of paid-up or extended term insurance." The policies in this case contain no such provision, which appellee suggests was probably inspired by this litigation.

Appellant cites a large number of cases from other jurisdictions, which deal with situations where the insured died after the option period expired without having exercised any of the options, or where the provision for extended term or paid-up insurance was expressly provided to be applicable automatically and immediately upon lapse. Obviously, those cases are not controlling or persuasive here. Appellant contends they are based on the fundamental principle that non-forfeiture options are intended to permit the insured, upon lapse of a policy, to either obtain the net value of the policy in cash, or use it as a single

premium to purchase extended coverage, and that only so much extended coverage can be allowed as the net value of the policy will pay for. This does not answer appellee's contention that she has the right of election until the end of the option period, and cannot be deprived of it before that time by any act of the insurer. The contention that appellee seeks to have extended coverage allowed although there were no net values in the policies to pay for it is without any foundation. She makes no such claim. She admits the cash surrender value would purchase extended insurance for only four and a fraction days from the date of the lapse, but she claims that this cannot be done by the company before the option period expires, and that, meanwhile, she has the right to pay the loans, or to have them deducted from the face amount of the policies and that she is entitled to the remainder. *New York Life Ins. Co.* v. *Slocum,* (C.C.A. 3) 177 Fed. 842, reversed in 228 U. S. 364, and *Gooch* v. *Metropolitan Ins. Co.,* 49 S. W. (2d) (Mo. App.) 679, reversed by the Supreme Court of Missouri, 61 S. W. (2d) 704, did not embrace the issue in this case. The question in the *Slocum case* was whether the insurer had accepted a note in payment of a premium. The *Gooch case* involved the question of whether loans were to be deducted from the surrender value or from the face amount of the policy. The surrender value in either case was more than sufficient to cover a period beyond the date of the insured's death. The Supreme Court of Missouri reversed the Kansas City court of appeals and held the loans were to be deducted from the face amount of the policies. This tends to support the claim of appellee.

No rule in the interpretation of an insurance policy is more firmly established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured to the end that he will not be deprived of the benefit of insurance for which he has paid, except where the terms of the policy

clearly, definitely and explicitly require it. (*Lenkutis* v. *New York Life Ins. Co.* 374 Ill. 136; *Midwest Dairy Products Corp.* v. *Ohio Casualty Ins. Co.* 356 id. 389.) The policies in this case, prepared and issued by appellant, expressly provide that the insured shall have the right to elect one of the options mentioned for a period of three months after any default in the payment of a premium, and that the·failure to pay a loan shall not avoid the policy unless the indebtedness shall equal the loan value, nor until thirty days after notice to the insured. The indebtedness did not equal the loan value of the policy and no notice was given the insured or the beneficiary. The only provision in the policy upon which appellant could base a claim that it had become void is that which provides: "Except as herein expressly provided, the payment of any premium or installment thereof shall not maintain this policy in force beyond the date when the succeeding installment thereof becomes payable." Appellant says the phrase "except as herein expressly provided" can only refer to the grace period of thirty-one days for the payment of premiums, which is not involved here, and to the "non-forfeiture provisions." To give the interpretation to this clause which appellant urges is to ignore the rights given the insured under the optional provisions. It is to be remembered that the options were paid for by the premiums, and became a substantial right under the policy, by the terms of which the options continue in force for three months after default in the payment of a premium. It is so manifest that the rights of the insured under the optional provisions could not be abrogated by any action of the insurer during the option period as to need no citation of authority. It is equally apparent that under the optional provisions the policy remains in force during the option period for the purpose of enabling the insured to exercise any one of the options granted. There is no express provision in the policy by which the insured, had he lived, would have been pre-

vented during that period, from paying his loan and reinstating the policy to its full face value and the court cannot read such a provision into it by implication. Under the rule of construction stated this right was preserved to the insured.

In *Metropolitan Life Ins. Co.* v. *George,* 51 Ga. App. 191, 192 S. E. 514, where the facts were analogous to those in this case, the court, under the rule that an insurance policy must be construed in favor of the insured, held that the right of election under the options given is a property right, not a mere privilege personal to the insured, and that in case the insured dies after default, within the period allowed to make his election, the right of election survives to his beneficiary, and that such rulings are founded on the soundest sort of judicial reasonings. The court further held the policy having matured as a death claim and the election, so far as the beneficiary is concerned, being merely as between different amounts of money, the law will presume an election on the part of the beneficiary most favorable to her,—that is, the greatest amount of money obtainable, under the provisions of the policy; that the policy having so matured, it was not necessary, in order that the beneficiary have the right of election, to repay the loan with other funds, but the beneficiary was entitled to re-- cover the amount of the extended insurance stipulated in the options, less the loan and interest. To the same effect are *Veal* v. *Security Mutual Life Ins. Co.* 6 Ga. App. 721, 65 S. E. 714, *McEachern* v. *New York Life Ins. Co.* 15 id. 222, 82 S. E. 820, and *State Mutual Life Ins. Co.* v. *Forrest,* 19 id. 296, 91 S. E. 428. In *Afro-American Life Ins. Co.* v. *LaBerth,* 136 Fla. 37, 186 So. 241, the court points out that an apparent conflict in authorities on the question of a beneficiary's right to elect may be harmonized by reason of the fact that in cases holding the right of election does not survive, the option provisions operated automatically upon default, subject only to change by the

election of the insured, while in cases holding the right of election does survive there was no provision for automatic continuance on default. The case at bar is in the latter class.

The doctrine of survival of the right of election to the beneficiary and the presumption of election to take the most beneficial option, is also the rule laid down in *New York Life Ins. Co.* v. *Noble,* 34 Okla. 103, 124 Pac. 612, *Afro-American Life Ins. Co.* v. *LaBerth, supra, Equitable Life Ins. Co.* v. *Germantown Trust Co.* 94 Fed. (2d) 898, *Hampe* v. *Metropolitan Life Ins. Co.* 21 S. W. (2d) 926, and *Jeske* v. *Metropolitan Life Ins. Co.* 113 Pa. Supp. 118, 172 Atl. 172.

Appellant says it does not deny the right of election survived to appellee, but contends that if the most favorable option is selected, she could only recover the $2 or $3 as paid-up insurance, because it says there is no option in the policies more favorable to her. This contention omits any consideration of her right to repay the loan and thus restore the full face value of the policies, and is fully answered in the Georgia cases above cited, decided under similar options and facts. Appellant cites no applicable authority to the contrary. On both sound reasoning and precedent appellee was entitled to the relief awarded by the Appellate Court. The judgment of that court is, accordingly, affirmed.              *Judgment affirmed.*

GUNN, C.J., and SHAW, J., dissenting:

We are unable to concur in the majority opinion. The options granted by the clauses in the policy under consideration provide that the *insured* may elect within three months after default one of the following options: (a) To receive the cash surrender value, (b) to purchase non-participating paid-up life insurance, (c) to continue the insurance for the face amount as paid-up extended term

insurance for such period as would be covered by the surrender value of the policy.

The options never provided for the application of any fund greater than the cash surrender value. Cash surrender value means "the value of a policy or contract of insurance given up for cancelation." (*In re Welling*, 113 Fed. 189; *Hiscock* v. *Mertens*, 205 U. S. 202, 51 L. ed. 771.) It is no more than surplus premium paid in on life insurance. (*In re Morgan*, 282 Fed. 650.) With this precise language in the contract there is nothing that gives anybody an option at any time or under any condition to receive the amount payable at the death of the insured. Moreover the options provide that before any of them may be exercised the policy must be "surrendered." To surrender means "to cancel, to yield up," within the meaning of a policy which stipulated that after three annual premiums the insured might surrender the policy and receive a paid-up policy for a lesser amount. *Wells* v. *Vermont Life Ins. Co.* 28 Ind. App. 620, 63 N. E. 578; *Semble-Goodhue* v. *Hartford Fire Ins. Co.* 175 Mass. 187, 55 N. E. 1040.

It is clear this contract has reference to a value existing while the insured is still alive, because paid-up value can only exist during the lifetime of an individual. Referring to this value the Supreme Court of Pennsylvania in *Irving Bank* v. *Alexander*, 280 Pa. 466, says: "The right to collect this value, or change the person to receive it might have been exercised at any time during life, but on death these rights disappear; they do not survive the insured." Surrender value represents a different sum than the proceeds payable on a policy after the death of the insured, which is created through the happening of the insurance hazard. It is also plain that the policy contract contemplates that the option shall be exercised during the life of the insured. The policy does not provide that the "beneficiary" may exercise the right, but it is given to the *"insured."* The contract is a three-party contract, between

the insured, the insurer and the beneficiary. The right to elect is not given to the beneficiary.

Since these options provide for the application for "a cash surrender value," and the cash surrender value can only exist in the policy during the life of the insured it is clearly contemplated they must either be exercised during the life of the insured, or applied in such a manner as would bring the beneficiary exactly the same results as would have been obtained by the insured if living. The majority opinion holds that the right of election survives to the beneficiary, and that she has the right to the greatest amount of money obtainable under the policy. This is correct only to the extent that the beneficiary can alone obtain what the insured could have obtained, because to permit otherwise would write something into the policy that is not there.

In our opinion this case cannot be distinguished in principle from *Coons* v. *Home Life Ins. Co.* 368 Ill. 231. The only difference in the options, is that in the *Coons case,* if election was not made, paid-up insurance was given automatically. In the present case it provides that paid-up insurance will be continued if no election was made. The insured made no election, and the beneficiary was entitled to make no election other than the insured could have made. The *Coons case* held that the policy lapsed at the expiration of the grace period, and that prospective dividends could not extend the policy so as to permit a beneficiary to recover, where the death of the insured took place after the grace period, without payment of premium. The *Coons case* cites *Keller* v. *North American Life Ins. Co.* 301 Ill. 198, where unpaid premium notes at the time of the death of the insured were claimed to amount to payment of premium, which gave the policy a loan value against which the insured could borrow enough to pay the notes thereby creating automatic insurance up to the time of the insured's death. We adopted the language of the *Keller case,* where it is said: "It makes the company furnish the money out

of the loan value of the policy with which to pay the note that Keller gave it to create the loan value. By its operation the note provided the means with which to pay itself, and secured, in addition thereto, $80,000 of insurance. To place such a construction on the transaction * * * would be to defraud the company of its property."

In the *Coons case* we held that the primary end sought was to have the premium paid out of the funds which the premiums, when paid, created, but this position was rejected upon the authority of the *Keller case*. In the present case the primary end sought is to have the loan paid out of the amount payable upon the death, upon the assumption that three-months' additional insurance, without pay, was secured to the assured by reason of the options given to the insured in case of default after three full years of premiums had been paid. As pointed out above the options only apply to surrender value, and not death value.

In exactly the same kind of a policy as is herein involved, and with respect to the same options, the Supreme Court of Minnesota held: "What really happens upon default in the payment of premiums is that during the grace period the insured is tentatively indebted to the company for the new premium, which, in case of loss, is deducted from the payment made under the policy, but if loss does not occur, and the premium is not paid during the grace period the default takes effect as of the due date of the premium, and automatically the extended insurance goes into effect as of that date, subject to the insured's right during the three-months' period to choose one of the other two options as substitute therefor." *Erickson* v. *Equitable Life Assn.* 193 Minn. 269, 258 N. W. 736.

In *Clausen* v. *New York Life Ins. Co.* 244 Iowa, 802, 276 N. W. 427, it is held that where a life insurance policy lapsed for non-payment of a premium some 335 days prior to the insured's death, and the loan value was exhausted except for the sum sufficient with which to purchase insurance for 270 days from the date of default, the beneficiary

could not under like options elect to have the paid-up insurance value commence to apply three months after the default, and thus recover the face of the policy.

In *Mills* v. *National Life Ins. Co.* 136 Tenn. 350, 189 S. W. 691, commenting upon a lapsed policy the court said: "We do not find any provision of the policy whereby it could be contended that continued insurance in the full amount could exist, and an indebtedness be outstanding at the same time. When the policy lapses it becomes, so to speak, in liquidation under its terms, and if the reserve or cash value has been withdrawn, there is no fund left to pay for continued insurance during the extended term, and, therefore, the extended term insurance fails to take effect. This is necessarily sound insurance business."

In the present case there was only enough cash surrender value left, after deducting the loans, to pay for four days' insurance. ·No other fund is authorized under the terms of the policy to be applied towards the payment of extended insurance. The present opinion does not even deduct part of the death benefit to pay for the three-months' extended insurance, but only uses it to pay the loan and leaves three-months' insurance in force without payment of premium. The effect of this decision is to overrule the *Coons case,* because, in the *Coons case,* even though extended insurance was automatically applied, the same three options were given as in the present case. Since the majority opinion holds the option can be exercised after the death of the insured named in the policy, the same facts as shown in the *Coons case,* with the same options, upon election would authorize a recovery, in spite of our prior holding. We are of the opinion that the judgment of the Appellate Court should be reversed.

Upon petition for rehearing the following additional opinion was filed:

Per CURIAM: A motion has been made in this case under section 92 of the Civil Practice act (Ill. Rev. Stat.

1939, chap. 110, par. 216) to submit to this court certain original evidence not offered in the trial court.

This section purports to give the Supreme and Appellate Courts power to receive evidence not produced on the trial. Except as provided by the constitution for the filing of original suits in the Supreme Court, its jurisdiction is wholly appellate. In so far as section 92 of the Civil Practice act, *supra,* attempts to give the Supreme Court original jurisdiction on the appeal of a cause, of matters germane upon the trial thereof, this provision contravenes section 2 of article 6 of the constitution, which provides that the Supreme Court has appellate jurisdiction, only, in all cases except in cases relating to the revenue, *mandamus* and *habeas corpus.* The matters offered do not come within the original jurisdiction of the court. The motion is denied.