The Prudential Insurance Company of America, Appellee, v. Samuel J. Richman et al., Defendants below.

Appeal of Bessie Richman et al., Appellants.

Gen. No. 39,254.

Opinion filed November 10, 1937. Rehearing denied November 22, 1937.

SIMS & STRANSKY, of Chicago, for appellants; FRANKLIN J. STRANSKY and PAUL M. MITCHELL, both of Chicago, of counsel.

Hoyne, O'Connor & Rubinkam and George Gillette, both of Chicago, for appellee; Nathaniel Rubinkam, Norbert B. Tyrrell and William C. MacLean, all of Chicago, of counsel.

Mr. Presiding Justice Hebel delivered the opinion of the court.

The Supreme Court directed this court to consider the consolidated cases entitled: *The Prudential Insurance Company of America, a corporation, Plaintiff-Appellee, v. Samuel J. Richman, et al., Defendants. On appeal of Bessie Richman, Fred J. Richman, Daniel G. Marks and Samuel J. Richman, Defendants-Appellants, and The Prudential Insurance Company of America, a corporation, Plaintiff-Appellee, v. Bessie Richman, et al., Defendants. On appeal of Bessie Richman, Fred J. Richman, Daniel G. Marks and Samuel J. Richman, Defendants-Appellants,* and bearing Nos. 39,254 and 39,255 in this court.

An appeal was directed to the Supreme Court by the defendants from decrees of foreclosure, one of which was entered in the superior court of Cook county, and bears the number 39,254 in this court, the other decree of foreclosure was entered in the circuit court of Cook county, and bears the number 39,255.

The Supreme Court, in the consideration of the appeals of the defendants, passed upon the question of its jurisdiction to consider the appeals on the grounds urged by those defendants in the case of *Prudential Ins. Co. v. Richman,* 364 Ill. 234, and said in part: "There is no substantial controversy as to the facts. It is not disputed that the Prudential Company made the loans nor that the defendants received the money, one of which loans was in the principal sum of $150,000, and the other $85,000. Neither is there any disagreement between the parties as to the sole ground upon which the appeal is prosecuted directly to this court rather than to the Appellate Court. In the words of

the appellants' brief, it is claimed 'that the loans of money .... were *ultra vires* the appellee and that said notes and mortgages are void and unenforcible because *inter alia,* the investment powers of the appellee enumerated in its special charter are limited to investments in stocks of certain States and also in bonds secured by mortgages on real estate located only within the State of New Jersey and not elsewhere.' In support of this premise it is contended that certain acts of the legislature of New Jersey are void under the constitution of that State, and the alleged unconstitutionality of these acts is the sole reason assigned for a direct appeal to this court and the only ground upon which it is contended that we have jurisdiction of this appeal.''

And further, the Supreme Court said upon the question of ultra vires: ''It will be found that one who has received the full benefit of his contract with a corporation cannot defend upon the ground of *ultra vires* unless the enforcement of the contract is directly prohibited by some positive rule of law or runs counter to good morals or established public policy. In the case at bar we are of the opinion that the constitutional question sought to be raised is immaterial; that no matter which way it might be decided—even if we should assume the power to pass upon it—the result must be the same so far as the defendants are concerned.''

In the consideration of the appeals now pending in this court we are controlled by what the Supreme Court has said, and it is hardly necessary for this court to cite authorities upon the question that this court is without jurisdiction to consider constitutional questions.

From the facts it appears that the suits were instituted by the plaintiff for the purpose of foreclosing two mortgages, which were liens upon the real estate described in the instruments and situated in the city of Chicago, county of Cook, and State of Illinois. The

notes secured by these mortgages were executed by
Samuel J. Richman, one of the defendants. The note
secured by the mortgage, the subject of litigation in
cause No. 39,254, was executed by Samuel J. Richman,
one of the defendants, on July 29, 1925, to secure a
loan made by the plaintiffs to Richman in the sum of
$150,000. This note and the mortgage were executed
and delivered in the city of Chicago, county of Cook,
and State of Illinois. By the terms of the mortgage
the property known as 1055–1067 Argyle street, Chi-
cago, Illinois, was conveyed to secure the payment of
the sum so secured. The note and the mortgage sued
upon in Cause No. 39,255 were likewise executed by
Samuel J. Richman, one of the defendants, on December
4, 1925, to secure a loan made by the plaintiff to this
defendant in the sum of $85,000. This note and mort-
gage were also executed and delivered in the city of
Chicago and State of Illinois, the mortgage purporting
to convey real estate known as 6009–6017 Broadway,
Chicago, Illinois.

The proceeds of the two loans were paid by the plain-
tiff to the defendant by plaintiff's checks delivered in
the city of Chicago, State of Illinois, at the office of
George H. Taylor Real Estate Mortgage Co. upon the
execution and delivery of said notes and mortgages.
The moneys so loaned and paid by check were the
funds of the plaintiff.

Samuel J. Richman, the defendant and mortgagor,
conveyed title to the premises subsequent to executing
the mortgages, but prior to the commencement of the
suits, to Bessie Richman, defendant, she acquiring an
undivided two-thirds and Daniel G. Marks, defendant,
a one-third interest by mesne conveyances. The other
defendant, Fred J. Richman, has an inchoate right of
dower in an undivided two-thirds interest.

By direction of the plaintiff the payments made by
or on behalf of Samuel J. Richman, under said notes
and mortgages securing the payment thereof, were

made to George H. Taylor Real Estate Mortgage Company at the office of said company in the city of Chicago, Illinois, until November, 1927, and thereafter to the First Trust and Savings Bank as the plaintiff's mortgage loan correspondent.

The plaintiff has been repaid in Cause No. 39,254 by the defendant Samuel J. Richman, or on his behalf, the sum of $88,090.07, on its loan of $150,000. The plaintiff has been repaid in Cause No. 39,255 by the defendant Samuel J. Richman, or on his behalf, the sum of $45,974.26 on the plaintiff's loan of $85,000.

The issues were referred to a master in chancery in the superior court and in the circuit court, and in both causes the master reported his findings of fact and conclusions of law, which were adverse to the defendants on all issues.

The objections of the defendants to the master's report in both causes were overruled by the master, and the objections, standing as exceptions, were likewise overruled by both courts.

The decrees of the trial courts being adverse to the defendants, the court in both causes after approving the master's report, ordered a sale of the premises if the defendant Samuel J. Richman, should not pay the amounts found due under the terms of the mortgages.

A sale was subsequently had, objections were filed by the defendants to confirmation thereof, which objections were overruled by the court, and the report of sale was confirmed and a deficiency decree entered.

One of the points made by the defendants is that the loans of money made by the insurance company to Samuel J. Richman, the notes to evidence said loans and the mortgages on Illinois real estate to secure the payment thereof, were ultra vires the plaintiff and that said notes and mortgages were void and unenforceable because *inter alia,* the investment powers of the plaintiff enumerated in its special charter are limited to

investments in stocks of certain States and also in bonds secured by mortgages on real estate located only within the State of New Jersey and not elsewhere. The moneys evidenced by the notes secured by the trust deed were received by the defendant Samuel J. Richman, and he derived full benefit of his contract with the insurance company. This money so received was used to pay for the improvements as well as for the land securing the payment of the loan, and the defendants cannot defend upon the ground of ultra vires.

The Supreme Court in the instant case announced the rule that "unless the enforcement of the contract is directly prohibited by some positive rule of law or runs counter to good morals or established public policy, the defense of ultra vires cannot prevail."

The defense offered by the defendants cannot be maintained for the reason that there is nothing in the record which would indicate that this contract is prohibited by law, or is subject to a violation of good morals or the established public policy in matters of this kind.

The defendants urge the further theory that the privilege licenses issued by the department of trade and commerce, division of insurance, State of Illinois, for the years 1924 and 1925 and for all subsequent years, limited the plaintiff to the transaction in this State of its appropriate business of life insurance and of the business of health and accident insurance, and that neither of said licenses conferred upon the licensee (plaintiff) either the express or incidental or implied power to engage in money lending activities in Illinois by making loans secured by mortgages on real estate located in Illinois, and that therefore the notes and mortgages involved are void.

The plaintiff insurance company made application in the year 1886 under the Illinois Insurance Act for a license to transact its business of life insurance.

Upon such application a license was issued authorized by the proper authorities of the State of Illinois, granting it power to transact its business of life insurance in this State. The following year a further license was issued by the authorities having such power to transact health and accident insurance in the State. The licenses issued by the State of Illinois granted authority to conduct life, health and accident insurance in this State.

Upon the question of making loans in this State by the plaintiff insurance company, we quite agree with what was said in the brief of the defendants that they are not unmindful of the necessity of life insurance companies to invest their funds so as to enable them to meet their obligations to their policy holders, but such necessity like all powers of corporations is subject to regulation and control by the sovereign State to which corporations owe allegiance, and in the case of life insurance companies they must comply with the statutory provisions before engaging in any activities in a foreign State, so the question is: What privileges were granted by the State to the plaintiff when the State granted a license for the transaction of life, health, and accident insurance in the State of Illinois?

The controlling factor lies in the provisions of the Insurance Act of the State, by which a foreign corporation is authorized to engage in insurance business within the State. In order that an insurance company may transact a life, health and accident business within the State it must obtain a license for that purpose. Upon application the Insurance Act provides for the necessary steps in the granting of authority to conduct an insurance business. The plaintiff insurance company has been licensed to transact an insurance business in this State, and the question is whether by the provisions of its license the insurance company has authority to invest funds received in its business of

insurance, in loans, properly made, secured by notes or trust deeds to secure the payment of moneys received by individuals. The defendant Samuel J. Richman did receive from this plaintiff company the moneys evidenced by the promissory notes and the trust deeds to secure the payment upon the real estate described in the deeds and the defendants now seek to question the authority of the insurance company to make the loans in question.

The plaintiff insurance company replies to this contention that the license issued to the plaintiff company authorizing it to transact insurance business in the State of Illinois carries with it the right incidental to that business of investing its funds in the State, and points to the fact it is alleged and admitted in the pleadings that the Prudential Insurance Company of America, is a corporation organized under the laws of the State of New Jersey for insurance purposes. The defendants suggest, however, that it was not chartered for any other purpose, and is not a loan or investment company. At this point we might suggest that insurance companies are excepted from the General Corporation Act of this State, which controls the organization of companies for the purpose of doing business under this Act. The General Corporation Act in force in Illinois at the time of making the mortgages was the act of June 28, 1919, (ch. 32, Cahill's Ill. Rev. Stats. 1931) entitled: "An Act in relation to corporations for pecuniary profit." Sec. 1 provides that the Act shall be known as "The General Corporation Act," and sec. 2 provides: "Corporations may be organized in the manner provided in this Act for any lawful purpose, except for the purpose of banking, insurance, real estate brokerage. . . ." The provisions of the Act relating to foreign corporations are secs. 8, *et seq.* Sec. 80 provides: "Each foreign corporation organized for pecuniary profit (except banking, insurance,

building and loan and surety companies), not now licensed to do business in this State, shall, before it transacts any business or maintains an office in this State, procure a certificate of authority therefor from the Secretary of State. . . .''

By this provision insurance companies are excluded from the operations of the General Corporation Act, and are controlled by the provisions of ch. 73, Cahill's Ill. Rev. Stats. 1933, relating to fire, marine and inland navigation insurance companies.

Did the plaintiff insurance company have the implied power to loan moneys, such as was exercised, and accept promissory notes and trust deeds, executed by the defendant Samuel J. Richman, securing the payment of the amounts? In the case of *Metropolitan Life Ins. Co. v. Whitestone Management Co.*, 77 F. (2d) 255 (C. C. A. Seventh Circuit,) certiorari denied by U. S. Supreme Court, on October 28, 1935, Mr. Justice Sparks said: ''Appellants' first contention is that the loaning of money by an insurance company is a business separate and apart from that of writing insurance, hence, they urge, it was necessary for the Metropolitan Life Insurance Company, before it could legally loan money in Illinois, to secure a license pursuant to the provisions of the Illinois General Corporation Act, notwithstanding the fact that it at all times in question held a license from that State to do a life insurance business. They base their contention upon certain provisions of the General Corporation Act of Illinois, and other unrelated statutes, referred to by them. . . .

''We are of the opinion, however, that the General Corporation Act of Illinois has no applicability whatever to insurance companies conducting an insurance business in Illinois under a license so to do issued by that state, even though such insurance companies loan their money and take security therefor within that state. In *In re Peoria Life Insurance Company*, 75 F.

(2d) 777, decided February 11, 1935, this court held that an insurance company, aside from the mere issuance of policies, has the highest duties and powers to protect its policies and the investments which they represent, and has all incidental powers reasonably necessary to the performance of those duties. We can conceive no higher duty of an insurance company than that of investing its money and taking security, for upon its success in this respect the success of the entire structure depends. We are in accord with the reasoning and conclusions in *Bankers' Life Company v. Horsfall*, 48 S. D. 629, 205 N. W. 714; and *John Hancock Mutual Life Insurance Company v. Lookingbill* (Iowa) 253 N. W. 604. A perusal of the Illinois statute and decisions discloses no tendency on the part of the Legislature or courts to construe the statutes in any manner inconsistent with this holding. The General Corporation Act of June 28, 1919, as amended (Smith-Hurd Rev. St. 1931, c. 32 sec. 1 et seq., chapter 32, Cahill's Rev. Ill. St. 1931, sec. 1 et seq.) was in force when this mortgage was executed. Section 80 et seq. of that act, as amended (Smith-Hurd Rev. St. 1931, c. 32, sec. 80 et seq.) relate to foreign corporations, and except insurance companies from its operation. A reasonable construction of the Illinois Insurance Acts of March 26, 1869, June 18, 1883, June 7, 1889, April 18, 1899, and May 20, 1907, as amended, found respectively in Smith-Hurd Ann. St. c. 73, secs. 205 et seq. 60, 290, 240, 261, Cahill's Rev. St. 1933, c. 73 pars. 315 et seq., 76, 393, 357, and 375 recognizes the incidental right of a life insurance company, foreign or domestic to invest its funds in Illinois.''

Counsel for the defendants criticise the application of this opinion to the facts as we have them before us. From an examination of the opinion called to our attention, we find that the court in no uncertain terms urged the conclusion that an insurance company organized

under the Insurance Act of this State has implied power to invest its money and take security to protect the collection of the money invested, and then goes on to say in effect that the legislature or courts have not construed the statutes in any manner inconsistent with the implied power exercised by the insurance company. After carefully considering this citation, we are of the opinion that it is of persuasive force upon the very questions called to our attention, and are inclined to follow the reasoning adopted by the court in its opinion.

Defendants further contend that the plaintiff has no standing in a court of equity to foreclose the mortgage in question because the plaintiff comes into equity with unclean hands. Two grounds are urged, the first, that the plaintiff was legally incompetent to make the mortgage loans, and that it violated the laws of New Jersey and its charter contract, which prohibited the plaintiff from making the mortgage loans in question and which violation was in direct defiance of the statutes and decisions of the Supreme Court of Illinois. The answer of the plaintiff is that the defense of unclean hands is predicated upon the defense of ultra vires and the license defense raised by the defendants. Upon these two defenses offered, as we have indicated in our opinion, we do not agree with the theory of the defendants.

The second ground urged is that since the commencement of these suits, the plaintiff, in compliance with the provisions of the Insurance Act of the State of Illinois (Ch. 73, Cahill's Ill. Rev. Stats. 1931) transmitted to the director of insurance of the State of Illinois, annual reports or statements, sworn to by plaintiff's president and secretary, listing the value of the property covered by the mortgage in Cause No. 39,254 as $427,500, for the years ending Dec. 31, 1932 and 1933, and listing the property covered by the mortgage in Cause No. 39,225 as $235,000, for the years ending Dec. 31, 1933 and 1934, and it is further urged that the plaintiff invoked the

jurisdiction of the trial courts by filing its sworn bills of complaint and by procuring the appointment of receivers for said property in amounts less than one-fourth the values sworn to by the plaintiff in its annual reports filed with the director of insurance.

The value of the premises was a controverted issue of fact, which was before the courts, and the deciding factor in the disposition of said motions is the value of the premises at the time.

The court in each case determined the value of the property to be approximately the amount alleged by the plaintiff in its bill to foreclose, which in Cause No. 39,254 was $106,450, and in Cause No. 39,255 was $60,000, and that the price bid at the sale for these properties was in Cause No. 39,254, $162,085.20, and in Cause No. 39,255, $107,396.48, a total of $269,481.68. This decision was reached by the court after it considered the evidence offered by the parties upon the question of values. The plaintiff established by the facts the value of the premises at the time of the foreclosure, and there is nothing to indicate the plaintiff company was seeking to obtain relief in violation of the law.

The other question concerns the payment of personal property taxes. Of course, under the law, the situs of the property is the home of the insurance company, which is situated in the State of New Jersey, a fact undisputed, and under these circumstances the property is not properly assessable in this State. Such being the fact, there was no violation of the statutory provision regarding the assessment of the personal property for the purpose of taxation.

The final question before us is whether the court was in error in failing to fix an upset price which would control the bids, to some extent, at the sale.

Since this decree was entered, the Supreme Court in the case of *Straus v. Anderson,* 366 Ill. 426, held that in a suit to foreclose on the indebtedness of a large

apartment building, the court in ordering a resale of the property has power to fix an upset price prior to the sale. In the case of *Levy v. Broadway-Carmen Bldg. Corp.*, 366 Ill. 279, the court held that the holding in the *Chicago Title & Trust Co. v. Robin*, 361 Ill. 261, is not adhered to, and further upon the question of fixing an upset price, the court said: "Each case must be based upon its own facts, and from this record we are of the opinion that no such gross inadequacy existed in the bid of $50,000, as would warrant the chancellor in refusing approval of the master's sale."

The court further stated: "Although the property had been sold, before the panic, for $135,000, the value of real estate was greater then than at the time of the master's sale." This reasoning of the court would apply to the instant case. It is true that the report of values filed by the plaintiff insurance company with the insurance department was considerably higher than the amount received at the sale and the values fixed by the court at the time the receiver was appointed. We feel that the court exercised its discretion in determining whether or not the sale price was a proper one, and we are unable to find from anything in the record that the price received for the property, as indicated in our opinion, was not a fair one. On the contrary, the price received at the master's sale was higher than the value considered by the court at the time of the appointment of the receiver, and for that reason we do not believe the defendants were injured by failure of the court to consider the petition to fix an upset price.

For the reasons stated the decrees are affirmed.

*Decrees affirmed.*

DENIS E. SULLIVAN and HALL, JJ., concur.