Stanley H. Doggett, Appellant, v. North American Life Insurance Company of Chicago et al., Appellees.

Gen. No. 43,207.

614

Opinion filed April 11, 1946. Additional opinion filed and rehearing denied May 17, 1946. Released for publication May 17, 1946.

McCarthy, Witry, Lyon & McCarthy, of Chicago, for appellant; Emmett J. McCarthy and George R. Lyon, both of Chicago, of counsel.

Arthur C. Rooney and Deneen A. Watson, both of Chicago, for appellees.

MR. JUSTICE SCANLAN delivered the opinion of the court.

A petition for a writ of mandamus to compel North American Life Insurance Company of Chicago, its president, E. S. Ashbrook, and its secretary, W. O. Morris, to permit the petitioner, or his agents and attorneys, to inspect and examine the list of names of the stockholders of said corporation, the record of their addresses and the number of shares of stock held by them, and to make extracts therefrom. The case was tried by the court without a jury. A judgment was entered denying the writ. Petitioner appeals.

This was the second trial of this cause. In the first trial, also tried by the court without a jury, there was a judgment order entered awarding the writ and assessing a penalty of $288.33 against each of the respondents for their failure to permit the petitioner to examine the record of shareholders for a proper purpose. Respondents appealed and we reversed the judgment order and remanded the cause for a new trial upon the sole ground that the trial court erred in excluding certain evidence offered by the respondents. (See 314 Ill. App. 193, Abstract Opinion.)

Petitioner contends that "the evidence establishes the fact that his demand to examine the list of stockholders was made for a proper purpose, that the judgment should be reversed, that a writ of mandamus should be awarded him, and that each of the defendants should be assessed the statutory penalty for refusing to let him examine the list of stockholders." Respondents contend that the petitioner's demand was not made for a proper purpose and the judgment should be affirmed.

Petitioner owns 1,150 shares of respondent corporation's stock, which he acquired in 1932. In addition members of his family own 2,300 shares. All of said stock was owned for many years by the father of petitioner, who died in December, 1930. After the

petitioner acquired the stock he took an active interest in the affairs of the company and attended the meetings of stockholders. He became acquainted with the officers of the company and corresponded with the company in regard to its financial and administrative affairs. All of the directors of the company were officers of it or persons on the payroll of the company. After 1932 no dividends were paid by the company. Prior to the annual meeting of the company in January, 1937, petitioner was active in organizing a stockholders' cooperative committee and he has since served as the chairman of that committee. The petitioner contends and the proof shows that the object of the committee was "to gain some outside representation for the minority group of stockholders on the Board." We are satisfied, after a careful examination of this record, that the present contention of respondents that petitioner's request for a list of the stockholders was not made for a proper purpose, is an afterthought, and without merit. On September 16, 1936, petitioner wrote a letter to E. S. Ashbrook, president of the respondent company, in which he requested that the company furnish him with a "copy of stockholders" as of January, 1936. In Ashbrook's answer to that letter, dated September 25, 1936, he stated: "On the subject of a list of our stockholders, the Company from its very inception has adhered strictly to the policy of protecting its stockholders by not passing out any information about them." On October 28, 1939, petitioner's attorneys addressed a letter to the respondent corporation, "Attention: E. S. Ashbrook, President," which contained the following: "Mr. Stanley H. Doggett desires to examine the record of the present shareholders of the Company, together with the record of their addresses and the record of the number of shares held by them. He wishes at the same time to make extracts from such records and desires to obtain such information in

order that he may know who are his fellow shareholders, where they reside and what their interest in the Company amounts to, so that he may discuss with them matters of common interest pertaining to the management and affairs of the Company. His examination of the records will be made solely for the purposes herein set forth." In Ashbrook's answer to that letter he stated: "The policy of this Company has always been to not furnish an official Stockholders' List to any one." The instant petition for a mandamus was filed on November 3, 1939. On November 9, 1939, a small group headed by George E. Tribble acquired stock in the company, and shortly thereafter acquired a substantial amount of stock. In December, 1939, Tribble, through his attorneys, demanded that respondent company make him an executive officer with equal voice in the management of the affairs of the company. This demand was refused by the company, and on January 10, 1940, Tribble filed a suit in which he sought to have the previous election of directors declared illegal. Ashbrook testified in the instant trial that in August, 1940, he was one of "six home office officials and executives who acquired the holdings of that group," and that when the deal was consummated the Tribble suit was dismissed. Ashbrook also testified that in a written report he then made to the stockholders of the company he stated: *"In addition to the above, one of our stockholders with whom we have had most cordial business relations for many years* demanded a complete list of the company's stockholders with their mailing addresses, together with details as to the number of shares owned by each; when refused this list suit was filed to obtain it in November, 1939"; *that the stockholder to whom he referred in the foregoing was Mr. Doggett, the petitioner;* that in the said report he also stated: "Our stockholders' list was most earnestly requested and desired by the group to which I referred. We know

that the interests of this group were detrimental not only to the interests of our stockholders as a whole but even to those of the policy holders''; that the group that he referred to in this statement was Tribble's group and his associates; that in the said report he also stated: *"While we do not question the integrity or sincerity of the present litigant for this list* we earnestly believe it to be our duty to withhold the information. This issue is pending before the Appellate Court of the State of Illinois and we, of course, shall abide by the decision of the Court." The following then occurred: "Q. [by petitioner's attorney]: *And the stockholder whose integrity and sincerity you did not question was Mr. Doggett? A. That is correct."* (Italics ours.) It is important to note that this report to the stockholders was made sometime after the instant proceedings were commenced. We cannot avoid the conclusion that at the time this important report was made to the stockholders that respondents believed that their established policy not to furnish a list of the stockholders to anyone was a complete defense to the instant action; that later they learned that it was no defense, and that then the defense that petitioner's requests of the company to furnish him with a list of the stockholders were not made for a proper purpose was formulated. The report made by Ashbrook, the president of the company, to the stockholders *after the instant proceedings had been commenced* is a complete answer to the defense now interposed. The argument that the present defense is not made in good faith is not without some force.

The trial court decided the instant proceeding upon an erroneous theory of the law. In his opinion, he did not question the honesty of the petitioner, but he did question petitioner's ability to aid the respondent company if he were elected a member of the board of directors. The court stated that in his experience

as a lawyer and a judge he had discovered that furnishing lists of stockholders often caused wrecking of the business. He stated emphatically that the petitioner would have to show "shenanigans somewhere along the line" before he would enter the writ. The petitioner was not obliged to show mismanagement or maladministration of the respondent corporation before he would be entitled to a writ. The instant suit is based upon Section 45 of the Business Corporation Act (Ill. Rev. Stat. 1943, chap. 32, par. 157.45 [Jones Ill. Stats. Ann. 32.045]), and the trial court's view of the law is not in accord with that section, which provides that "any person who shall have been a shareholder of record for at least six months immediately preceding his demand or who shall be the holder of record of at least five per cent of all the outstanding shares of a corporation, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and record of shareholders and to make extracts therefrom"; that "any officer, or agent, or a corporation which shall refuse to allow any such shareholder, or his agent or attorney, so to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, shall be liable to such shareholder in a penalty of ten per cent of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him by law"; that "nothing herein contained shall impair the power of any court of competent jurisdiction, upon proof by a shareholder of proper purpose, irrespective of the period of time during which such shareholder shall have been a shareholder of record, and irrespective of the number of shares held by him, to compel by mandamus or otherwise the production for examination by such shareholder of the books and

records of account, minutes, and record of shareholders of a corporation.''

In *Morris v. Broadview, Inc.*, 385 Ill. 228, the court construed Section 45 and held that it was incumbent upon a petitioner in a proceeding brought under that section to prove good faith and a proper purpose in demanding a list of stockholders. The final statement of the court is (p. 235):

''Arbitrarily withholding a list from stockholders who are interested in protecting their investment is a practice not to be tolerated by the courts under our statute. The other extreme of exercising the right of inspection for speculative or other improper purpose is equally bad. The duty of the courts is to ascertain from the facts in each case the good faith of the respective parties and apply the remedy so as to administer justice between the parties in each case.''

Section 45 does not require that the petitioner prove mismanagement or maladministration by the respondents before he would be entitled to the writ, and the holding in the *Morris* case is, as we have heretofore stated, that the burden placed upon a petitioner by Section 45 is to prove good faith and a proper purpose in demanding a list of stockholders.

In *Klein v. Scranton Life Ins. Co.*, 139 Pa. Super. 369, 11 A. (2d) 770, the plaintiffs, in their bill, sought to compel the defendants to permit them to examine the books of the corporation and to copy its list of shareholders. In passing upon a contention raised by the defendants that it was necessary for the plaintiffs to allege mismanagement or fraud to enforce the right of inspection the court held that it was not necessary for a stockholder to aver mismanagement or fraud to obtain his right to inspect the corporate records.

In *Drake v. Newton Amusement Corporation*, 123 N. J. L. 560, 9 A. (2d) 636, the Supreme court of New Jersey said (p. 637):

"And the common law also accords the right of inspection to a stockholder, if exercised in good faith for some purpose germane to his status or interest as a shareholder. Such inspection is justified if only for the purpose of ascertaining whether there has been proper management of the corporate affairs and business. Proof of maladministration is not a sine qua non. It is self-evident that the right is essential to the protection of the stockholder's property interest."

In *Hauser v. York Water Co.*, 278 Pa. 387, the petitioners alleged that they were dissatisfied with the management and believed that the best interests of the company required the election of a new board of directors and therefore they desired a list of stockholders in order to obtain proxies for use at the annual election. The court said (p. 390):

"As the list of stockholders was sought for a proper purpose, it was not necessary to aver mismanagement, or to state why plaintiffs desired a new board of directors. Indeed, such a list must be given, 'even though [relator's] only object is to ascertain whether the business has been properly conducted': *Hodder v. George Hogg Co.*, 223 Pa. 196, 198."

In the instant case the petitioner proved that his purpose in requesting a list of the stockholders was to solicit proxies from the stockholders in order to bring about the election of outside directors. In *Hohman v. Illinois-Iowa Power Co.*, 305 Ill. App. 17, 20, the court stated that where the purpose of the stockholder in asking for a list of the stockholders was the solicitation of proxies such purpose was a proper one. (See, also, *Hauser v. York Water Co., supra.*) It is a matter of common knowledge that the management of most of the well known corporations solicit proxies from the stockholders for use at the annual meetings of the stockholders held for the election of directors,

the proxies to be used for the election of directors designated by the management.

Upon the first appeal in the instant case it appeared that respondents offered to prove certain facts and that the trial court sustained petitioner's objection to the offer. The respondents in this court contended that the evidence offered tended to prove that George E. Tribble was actuated by improper motives in starting his proceeding to have the previous election of directors declared illegal, and that there was sufficient evidence in the record to make out a *prima facie* showing that the petitioner and Tribble were engaged in a common purpose to obtain partial or complete control of the management of the respondent company and that therefore the evidence offered that related to the conduct of Tribble was competent against petitioner in the trial of his petition as tending to prove the purpose of the petitioner in requesting a list of the stockholders. In our opinion we stated that if the respondents proved to the satisfaction of the trial court the alleged facts set up in their offer, a writ of mandamus should not be awarded. The respondents now contend that in the instant trial they introduced evidence tending to prove the facts set up in their offer upon the first trial as to the Tribble group and that therefore the purpose of the petitioner in requesting the list is *res judicata*. It is a sufficient answer to this strained contention to say that the case presented upon the first trial and the case presented upon the second trial are not the same; that they differ very materially. In view of the evidence in the instant trial as to certain statements in the report made by respondent company to its stockholders after the "six home office officials and executives" acquired the holdings of the Tribble group and the Tribble suit had been dismissed, any claim that the petitioner was acting in concert with Tribble comes with poor grace from the respondents, and should be dis-

regarded. The petitioner argues, with some force, that the fact that the respondents bought out the Tribble group while he is compelled to still fight for his rights also tends to show that he was not acting in concert with the Tribble group; that the report made to the stockholders is an acknowledgment that petitioner was not a party to that group.

The record shows that a small group, owning only ten or twelve per cent of the capital stock of respondent corporation, has retained complete control of its affairs for years, and there is merit in the contention that they have retained control because they have always refused to furnish a stockholders' list to anyone. The petitioner and the members of his family have owned a substantial amount of the stock of the company for many years. They have not held it for speculative or improper purposes. They are interested in protecting their investment. The report to the stockholders shows conclusively that respondents refused petitioner the list solely because of their established policy not to furnish a list of the stockholders to anyone.

The petitioner is not only entitled to his writ of mandamus as prayed for in his petition, but he is also entitled to have judgment entered against each of the respondents for their wrongful refusal to comply with the demand of petitioner for permission to examine the books and records of the corporation. The parties have stipulated that the value of the stock of the petitioner at the time of his demand for a list of stockholders was $2,883.30.

The judgment of the Superior court of Cook county is reversed and the cause is remanded with directions to the trial court to award the petitioner a writ of mandamus as prayed for in his petition and to also enter a penalty judgment against each of the respondents in the sum of $288.33, in accordance with the provisions of Section 45 of the Business Corporation Act

(Ill. Rev. Stat. 1943, chap. 32, par. 157.45 [Jones Ill. Stats. Ann. 32.045]).

*Judgment reversed and cause remanded with directions.*

FRIEND, P. J., and SULLIVAN, J., concur.

ADDITIONAL OPINION UPON PETITION FOR REHEARING.

Respondents have filed a petition for rehearing in which they contend that "the provisions of the Business Corporation Act do not apply to an insurance corporation"; that "the provisions of the Business Corporation Act, including section 45 thereof, are not applicable to insurance corporations because of section 156 of the Business Corporation Act (Ill. Rev. Stat. 1943, Chap. 32, par. 157.156 [Jones Ill. Stats. Ann. 32.160]), which is as follows: 'The provisions of this Act shall apply to all existing corporations, including public utility corporations, organized under any general law of this State providing for the organization of corporations for the purpose or purposes for which a corporation might be organized under this Act.' . . . . An insurance corporation may not be organized under the Business Corporation Act. That Act provides that corporations for profit may be organized under it for any lawful purpose or purposes except for the purpose of banking or insurance or the operation of railroads. (Section 3, Business Corporation Act, Par. 157.3, Chap. 32, Ill. Rev. Stats. 1943 [Jones Ill. Stats. Ann. 32.003].)" The instant defense which respondents now seek to interpose was not raised in the brief they filed in this court. The following were the sole points made in respondents' brief:

"I.

"In view of defendants' evidence at the retrial, the Appellate Court's decision in the original appeal on the subject of what constitutes an improper motive

is final and the rule of res adjudicata must therefore be applied.

## "II.

"In determining whether a shareholder's purpose is improper, it is the duty of the Court to ascertain from the facts in each case the good faith of the respective parties and apply the remedy so as to administer justice between the parties.

## "III.

"Plaintiff's constant demands upon the Company for information and his distortion thereof in letters circularizing shareholders is a further reason for denying him the relief requested.

## "IV.

"Where it is determined that a stockholder is entitled to the right to inspect, he cannot recover more than one statutory penalty regardless of the number of demands."

The brief of respondents assumed that the decision in the cause turned upon the question of the good faith of the parties.

Respondents concluded their brief as follows:

"For the reasons given, the harassing of the Company, the continual demands made on its officers for information, the uses made of the information so obtained in circularizing shareholders and upsetting, not only them, but the policyholders and agency force as well, and finally, the proven conspiracy existing between Tribble and the plaintiff, because of all of these things defendants ask that the judgment of the lower court be affirmed."

Under Rule 13 of this court we would be justified in striking respondents' petition for rehearing from the files. However, there is no merit in the defense they now seek to interpose. The right to exam-

ine corporate records given to a shareholder by Section 45 of the Business Corporation Act applies to all corporations organized for profit. It applies to insurance companies organized under another General Act.

In *Venner v. Chicago City Ry. Co.*, 246 Ill. 170, Venner filed a petition for *mandamus* against the Chicago City Railway Company and its president and secretary to compel the defendants to permit him to examine the books, records and accounts of the company, which were under their control. The defendant corporation filed an answer in which it set up that it was incorporated under a special public act of the legislature, approved February 14, 1859, and that it was not subject to the provisions of Section 13 of the Corporation Act approved April 18, 1872. That section provided: "It shall be the duty of the directors or trustees of every stock corporation to cause to be kept at its principal office or place of business in this State, correct books of account of all its business, and every stockholder in such corporation shall have the right at all reasonable times, by himself or by his attorney, to examine the records and books of account of the corporation." This section was a part of the General Act concerning corporations for pecuniary profit, which was approved April 18, 1872, and went into force July 1, 1872. The Supreme court held that Section 13 was a proper exercise of the police power of the State and that it affected all corporations, irrespective of the Act under which they were organized. At the time of the decision in the *Venner* case there was a General Corporation Act which expressly excepted banking and insurance companies from the organization provisions of that Act. The opinion in the *Venner* case was filed June 29, 1910, and the important ruling made therein has never been overruled nor modified.

In *People v. Building & Loan Ass'n,* 369 Ill. 518, it was held that the police power may be exercised not only in the interest of the public health, morals, comfort and safety, but also for the promotion of the general welfare; that building and loan associations are quasi-public in character, and because of this fact the State may, in the exercise of its police power, subject them to a degree of regulation which might be unnecessary and unreasonable in the case of purely private business corporations. The opinion states (p. 526): "All grants, stipulations or restrictions as to corporations are subject to subsequent alteration by general laws enacted under the police power. (*Integrity Mutual Ins. Co. v. Boys,* 293 Ill. 307; *Venner v. Chicago City Railway Co.,* 246 id. 170; *Ward v. Farwell,* 97 id. 593.)"

In *Babcock v. Harrsch,* 310 Ill. 413, the court cites with approval the ruling in the *Venner* case.

In *Wilson v. Mackinaw State Bank,* 217 Ill. App. 494, it was contended *by the bank* that the right given to a stockholder to examine the records and books of account of a corporation *did not apply to stockholders of a State bank organized under the Banking Act* and that the right extended only to stockholders of a corporation organized under the provisions of the General Corporation Act. The Appellate court of the Third District followed the ruling in the *Venner* case and held that the contention of the bank was without merit.

In *Maremont v. Old Colony Life Ins. Co.,* 189 Ill. App. 231, the court sustained the ruling of the trial court that Section 13 of the Corporation Act, approved April 18, 1872, that every stockholder in a stock corporation shall have the right at all reasonable times, by himself or by his attorney, to examine the records and books of account of the corporation, *applied to a life insurance company,* and the Appel-

late court states in its opinion that they did not see how the trial court could have ruled otherwise in view of the ruling in the *Venner* case.

The sole case cited by respondents is *Prudential Ins. Co. v. Richman,* 292 Ill. App. 261, 269, but that case does not support respondents' position. It was there held that in respect to its organization and powers the insurance company was governed solely by the provisions of the Insurance Act and not by the General Corporation Act, but the court did not hold, indeed, it could not hold, in view of the ruling in the *Venner* case, that the provisions of the General Corporation Act, enacted under the police power, did not affect all corporations alike. If that case were an authority for respondents' position, we would, of course, disregard it.

We may state that upon the first appeal in this cause respondents did interpose the instant point, but after petitioner cited the *Venner* case and other decisions that were adverse to the contention of respondents, the latter clearly abandoned the contention upon the second trial, and they now seek to again interpose the contention in their petition for a rehearing.

Respondents, in their petition, reargue certain points that we passed upon in our opinion, but we find nothing in the reargument to cause us to change our judgment.

Respondents close their petition with the following statement: "Certain information, previously unknown to respondents, has unexpectedly come to their attention since the opinion of this Court was rendered. Within a few days respondents will therefore file a Motion, supported by affidavit, *asking that the cause be remanded for retrial for the purpose of hearing newly discovered evidence."* (Italics ours.) Some days later respondents filed in this court a motion "to remand the cause to the trial court to hear newly discovered evidence concerning the ownership

of the 1150 shares of the Capital Stock of the North American Life Insurance Company of Chicago, a corporation, which form the basis of this suit, and to await the outcome of the present controversy between Appellant, Stanley H. Doggett, and Maud M. Doggett, his mother.'' Attached to the motion is an affidavit of one of the attorneys for respondents, in which he states that a letter, a photostatic copy of which is attached to the affidavit as an exhibit, has been received in the home office of the respondent company, on Friday, April 19, 1946. The affidavit further states that the ownership of the 1150 shares of the capital stock of respondent company by Doggett is the basis of his right to a list of the stockholders and that Doggett can have no right to said list if he does not own said shares of stock. Exhibit 1 purports to be a letter from a law firm in New York City notifying the respondent corporation that the mother of Stanley Doggett, Maud M. Doggett, claims to be the owner of the 1150 shares of stock; that she has demanded of her son the return of the shares, and that unless he returns the certificates in the immediate future the law firm has been instructed by Mrs. Doggett to institute suit to compel the return of the certificates. Doggett filed a counter-affidavit in which he asserts that he owns the said shares of stock and that they were given to him by his mother in 1936. It is evident that this motion is not a proper one and that its plain purpose is to influence our opinion in the matter of the petition for rehearing. It is an effort to make a part of the record in this cause alleged evidence that was not introduced in the trial court. Respondents, in the trial court, did not question Doggett's ownership of the stock. Indeed, they admitted in their answer that he was the ''registered legal owner on the books of North American Life Insurance Company of Chicago of eleven hundred fifty shares of the capital stock of said Company.'' If we assume that

respondents are acting in good faith in making the motion, and that they are proceeding upon the assumption that we have the right, under Section 92 of the Civil Practice Act, to receive additional evidence and to consider the same in passing upon questions before us, we may state that we have no such authority. In *People ex rel. Rusch v. Ferro,* 313 Ill. App. 202, in our additional opinion, we said (pp. 229, 230):

"The petitioner has filed a petition for rehearing in this cause. In support of the same petitioner has filed a written motion asking permission to file a certain document in the cause and 'moves the court that said document be made part of the record of the above entitled cause and be considered by the court in examining the petition for rehearing.' Attached to the motion is a photostatic copy of what appears to be a part of a sheet of paper bearing no date and upon which appear short notations made by a number of persons. The so-called document was not introduced in evidence in the trial court, but the petitioner contends that this court has authority under section 92 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.092] to receive additional evidence and to consider the same in passing upon the appeal. We have no such authority. In *Schmidt v. Life Assurance Society,* 376 Ill. 183, 197, 198, appears the following:

" 'Per Curiam: A motion has been made in this case under section 92 of the Civil Practice Act (Ill. Rev. Stat. 1939, chap. 110, par. 216) to submit to this court certain original evidence not offered in the trial court.

" 'This section purports to give the Supreme and Appellate Courts power to receive evidence not produced on the trial. Except as provided by the constitution for the filing of original suits in the Supreme Court, its jurisdiction is wholly appellate. In so far as section 92 of the Civil Practice Act, *supra,* attempts to give the Supreme Court original jurisdiction on

the appeal of a cause, of matters germane upon the trial thereof, this provision contravenes section 2 of article 6 of the constitution, which provides that the Supreme Court has appellate jurisdiction, only, in all cases except in cases relating to the revenue, *mandamus* and *habeas corpus*. The matters offered do not come within the original jurisdiction of the court. The motion is denied.' "

We have this day entered an order denying the motion of respondents.

After a careful examination of the petition for rehearing and the motion filed by respondents, we have reached the conclusion that the judgment we have heretofore entered in this cause is a just and necessary one and that respondents will adhere to the policy they have always followed, not to furnish a stockholders' list to anyone, unless the law compels them to do otherwise. The instant cause demonstrates that Section 45 of the Business Corporation Act enunciates a wholesome and necessary law.

The petition for rehearing is denied.

*Petition for rehearing denied.*

FRIEND, P. J., and SULLIVAN, J., concur.